SEASE v. DOBSON.

1. HARD CASES.—Settled rules of law established for a whole community should not be departed from to meet the fancied justice of one case; but where such rules do not require otherwise, a party should not, by the manner in which his cause is presented to the court, be deprived of his rights.

2. INTERLOCUTORY INJUNCTION—APPEAL.—A Circuit Judge has the right to refuse an injunction, and such refusal is not a decision on the merits, even though he bases his decision upon a ground which would be

decisive of the case if so held at the hearing on the merits; but if his refusal is rested upon an erroneous proposition of law, it may be corrected by appeal.

3. AGRICULTURAL LIENS—RES JUDICATA.—Where the Circuit Judge, the appeal record, the attorneys in the cause, and the Supreme Court treat a case as simply a proceeding to try an issue under the agricultural lien law as to whether a lien exists, it cannot be held in a subsequent action to recover the debt due, that the matter of indebtedness has been adjudicated, even though it should be shown in this action that the former proceeding was by summons, complaint, and answer.

4. IBID.—IBID.—Moreover, as the law prescribes no mode of raising the issue provided for by statute to try the validity of the alleged lien, it may be raised by formal pleadings.

5. THIS CASE DISTINGUISHED from Cheatham v. Morrison, 31 S. C., 326.

6. INJUNCTION—APPEAL—PRACTICE.—An order refusing an injunction reversed, with leave to plaintiff to apply again so soon as the remittitur is sent down; and the defendants meantime restrained by order of this court.

7. STAY BY APPEAL.—Where an appeal is taken from an order refusing an interlocutory injunction upon the ground that the matters at issue are res judicata, the cause should not be heard on its merits until the appeal has been disposed of.

Before FRASER and ALDRICH, JJ., Aiken, July and November, 1890.

Action by Alfred Sease against Joseph Dobson, Henry Dobsen, and S. L. Knopf, commenced July 12, 1890. The order of Judge Fraser was as follows:

This case is before me on a return by the defendants, Henry Dobson and Jos. Dobson, to a rule to show cause why an injunction should not issue, forbidding the defendant Lancaster to pay to the said Dobsons certain moneys in his hands arising from the sale of crops under an alleged lien, and representing certain personal property seized under an alleged mortgage to secure rent and advances claimed by the plaintiff.

A trial of issues framed in pursuance of the statute under the lien may perhaps leave as still an open question, whether a written instrument held on that trial not to be an agricultural lien as provided in the act, may not be a common law agreement, sufficient to create a lien enforcible in equity. Such, however, is not the status here. The return sets up, and the record offered in

evidence shows, that instead of a trial of issues under the lien law, the very debt now claimed by the plaintiff was put in issue and a verdict was rendered by the jury, in which they found for the plaintiff only the sum of two hundred dollars. This amounts to an absolute rejection of all over that sum, and the whole matter is *res judicata* as to the debt which the plaintiff now seeks to recover by the enforcement of an alleged lien on the fund in the hands of the sheriff. If plaintiff had any lien on the fund, whether under the statute or at common law, it could and ought to have been enforced in that proceeding; and plaintiff in that case demanded judgment against the defendants, Dobsons, for $683.70, while the verdict was only for $200, for which latter amount he had judgment. All over that was rejected. I have no right to call in question the methods by which this result was reached, and must accept it as the law of the case.

It is therefore ordered, that the restraining order heretofore made by me be rescinded and the rule discharged.

Judge Aldrich's decree was as follows:

This action was called for trial during the last term of this court for Barnwell County, and, after argument, was submitted to me for adjudication. I have looked over the papers, and find that on July 23rd, 1890, Judge Fraser made an order in which he considered and passed upon one of the most important issues in this litigation. Plaintiff appealed from Judge Fraser's order to the Supreme Court of this State, and on July 25th, 1890, the Hon. S. McGowan, an Associate Justice of said Supreme Court, made an order directing "Sheriff Lancaster" to "continue to retain in his hands the said four hundred and eighty-three 70–100 dollars until the cause can be heard and determined by this court," viz., the Supreme Court. Associate Justice McGowan, in the recital of the facts upon which he granted the aforesaid order, says: "Upon hearing the papers herein, and it appearing that the above entitled cause is now pending in this court upon appeal from decree of his honor, Judge Fraser;" and "that irreparable injury may result to the plaintiff, * * unless the *status quo* is maintained * * until this new and second ac-

tion (now on appeal) can be heard and determined in the Supreme Court."

It is clear, therefore, that this action is now in the Supreme Court; that it is within the jurisdiction of said court, and out of the jurisdiction of the Court of Common Pleas. This court cannot hear this action until the appeal herein has been determined by the Supreme Court, and the judgment remitted to this court. Whether said appeal is proper or improper is a matter exclusively for the Supreme Court. Without going into the questions of law above stated, I will state that this view of the law is supported by the reasoning and judgments in the following cases: *Bank* v. *Stelling*, 32 S. C., 102; *Agnew* v. *Adams*, 24 *Id.*, 87; *Whaley* v. *Charleston*, 8 *Id.*, 346; *McCown* v. *McSween*, 29 *Id.*, 134; *Hammond* v. *Railway Company*, 15 *Id.*, 10; *Elliott* v. *Pollitzer*, 24 *Id.*, 81; *Whaley* v. *Bank*, 5 *Id.*, 262; *Pringle* v. *Sizer*, 3 *Id.*, 335; *Ex parte Dunovant*, 16 *Id.*, 299; *Covar* v. *Sallat*, 22 *Id.*, 266.

Wherefore it is ordered, that the pleading, evidence, papers, &c., submitted to me be returned to and retained by the clerk of this court, subject to the provisions of law; that neither party to this action be prejudiced or in any manner injured by this attempt to try this action; that this attempt to try this case is without warrant of law; because said action is now upon appeal and pending in the Supreme Court of this State, and that this case be marked "continued" by the clerk.

*Messrs. W. A. Holman* and *Bates & Simms*, for appellant.

*Mr. J. J. Brown*, contra.

August 12, 1891. The opinion of the court was delivered by

Mr. Justice McIver. The controversy between these parties had its origin in two papers, bearing date 12th November, 1888, copies of which are set out in the "Case," both of which were signed by the two Dobsons, Joseph and Henry, defendants herein, purporting to give to the plaintiff liens on the crops of the two Dobsons raised during the year 1889, on certain land of the plaintiff rented to the defendants, for the purpose of secur-

ing the payment of advances to an amount stated in each paper, as well as the rent of said land. Each of these papers contains a clause giving to the plaintiff a mortgage on a horse as further security. These papers, however, were not signed by the plaintiff, and for that reason they have heretofore been held by this court not to be agricultural liens on the advances claimed to have been made, and enforcible as such under the provisions of the statute in reference to that subject. See *Sease* v. *Dobson*, 33 S. C.. 234.

Some time in the fall of the year 1889, the plaintiff applied for and obtained from the clerk of the court a warrant for the enforcement of the papers as agricultural liens, which was placed in the hands of the sheriff, who at the same time was appointed agent of the plaintiff. under the mortgage clause in the papers. By virtue of this warrant and his appointment as agent as aforesaid, the sheriff seized the crops of the defendants and the two horses mortgaged, and having sold the crops, an arrangement was made for the release of the horses by the deposit with the sheriff of an amount sufficient, with the proceeds of the sale of the crops, to pay the claims of the plaintiff, amounting in all to the sum of $683.70, which was left in the hands of the sheriff to await the result of the proceedings. This deposit was made by the defendant, S. L. Knopf, who claimed to hold valid liens on the property of the defendants, and who was permitted to intervene as one of the parties to the proceedings in order to sustain his claims.

After the sale of the crops by the sheriff, and within the time prescribed by the statute, the Dobsons filed their affidavit, accompanied with a notice to the effect that the amount claimed by plaintiff under his alleged agricultural liens was not justly due; but instead of proceeding under the issue thus made up to have the question of the amount due determined, it now appears that the plaintiff commenced what, on its face, appears to be a formal action by summons and complaint against the Dobsons, to which the sheriff was made a party, in which, after alleging that the plaintiff had rented the land to the Dobsons, and also made advances to them, in consideration whereof they had agreed to pay to the plaintiff a specified sum of money, and to secure such pay-

ment had given plaintiff a lien on their crops ; and after further alleging the seizure and sale of said crops by the sheriff, who continued to hold the proceeds under a notice from the Dobsons not to pay the same to the plaintiff, notwithstanding the same was justly due, demanded judgment against the Dobsons for the sum of $683.70, and that the sheriff be required to pay the same to the plaintiff out of the proceeds of the sale in his hands. This summons and complaint was served on the attorney for the defendants, but it appears that the defendants, the Dobsons, answered the complaint, admitting so much of the claim as was for rent ($200), but denying the claim for advances, and setting up a counter-claim.

Under these pleadings the case was heard by his honor, Judge Hudson, who manifestly was induced to suppose that he was simply trying an issue under the statute as to the amount due under an agricultural lien ; for after having held that the papers relied on as agricultural liens could not be so regarded, for the reason that they were not signed by both parties thereto, refused to allow the plaintiff to offer any evidence as to the amount which he claimed to have advanced to the Dobsons, inasmuch as the only question presented by the issue then on trial was whether anything, and if so, how much, had been advanced *under the alleged liens*, and having determined that the papers offered were *not* liens, of course, nothing could be due *under them ;* and hence evidence as to what the Dobsons may have been due the plaintiff by open account or otherwise was wholly irrelevant to the issue on trial. But as the lien for rent arose by virtue of the statute, and did not require any agreement in writing, he instructed the jury that the plaintiff might recover to that extent. Accordingly the jury rendered their verdict in the following form : "We find for the plaintiff two hundred (200) dollars for rent." Judgment having been entered upon this verdict, the plaintiff appealed, making three questions : 1st. Whether there was error in holding that the papers relied on as such could not be regarded as agricultural liens under the statute, because not signed by the plaintiff. 2nd. Whether there was error in refusing to allow plaintiff to offer evidence tending to show that he had made the advances as claimed. The third question, not being pertinent to

the present inquiry, need not be stated. This court affirmed the rulings of Judge Hudson, as may be seen by reference to 33 S. C., 235.

After the judgment of this court was rendered, the plaintiff commenced a formal action against the Dobsons and the sheriff, to which the other defendant, Knopf, became a party defendant, as above indicated, in which, after narrating the facts above stated more fully and at greater detail than we have deemed it necessary to do, and after alleging that Judge Hudson had, upon the notice of appeal from his rulings, granted an order directing the sheriff to retain in his hands until the further order of the court the entire sum of $683.70, which included the amount found due for rent, as well as the amount deposited to secure the release of the horses seized under the mortgage, he demands judgment: 1st. That the sheriff pay over to the plaintiff the sum of $200 found due for rent. 2nd. That the papers above referred to and originally relied on as agricultural liens be declared equitable mortagages on the crops, and that an accounting be had of the amount due thereon. 3rd. That the sheriff, after paying the amount found due for rent, be required to apply the balance of the fund in his hands to the amount found due on such accounting. 4th. For such other and further relief as may be just and equitable. And that, in the meantime, the sheriff be enjoined from paying out any of the fund in his hands except the amount found due for rent.

Upon the filing of this complaint, an application was made to his honor, Judge Fraser, at chambers, for an injunction, in conformity to the prayer of the complaint, who granted a rule requiring the defendants to show cause why the injunction demanded should not be granted, and in the meantime restraining the sheriff from paying out the money. Upon hearing the return to this rule, Judge Fraser rescinded the restraining order and refused the motion for injunction, upon the ground that the whole matter was *res judicata.* From this order the plaintiff appealed, substantially making two questions: 1st. Whether the judge erred in considering the merits on a motion for injunction at chambers. 2nd. Whether there was error in holding the matter to be *res adjudicata.* This appeal having been perfected, the plaintiff applied for and

obtained from Mr. Justice McGowan an order requiring the sheriff to retain in his hands the fund until the cause could be heard and determined by the Supreme Court. Subsequently the case upon its merits was submitted to his honor, Judge Aldrich, who declined to consider any of the questions involved, upon the ground that the case having been carried by appeal to the Supreme Court from an order of Judge Fraser determining one. of the main issues in the action, the Court of Common Pleas could not exercise any jurisdiction therein while it was pending in the Supreme Court. From this plaintiff also appeals, alleging error in such ruling.

From the foregoing statement it is very manifest that the plaintiff has never yet been allowed the opportunity of proving, if he can, his claim for supplies alleged to have been furnished the Dobsons, nor have they ever been permitted to prove, if they can, their demands against the plaintiff set up in their counterclaim; and if they are now precluded from doing so, the result would indeed be most unfortunate. It is true that parties may, and sometimes do, fail to obtain that justice which the real facts entitle them to, by the manner in which their cases are presented to the court; but such an unhappy result ought always to be avoided, if it is practicable to do so without infringing settled rules of law which it is essential to the welfare of the commonwealth to preserve in their fullest integrity; for being established for the guidance and control of the whole community, they should never be distorted or strained to suit the fancied justice of a particular case. Guided, or rather restrained, by these principles, we will proceed to consider the questions involved in these two appeals.

The first question presented is, whether Judge Fraser erred in considering the merits of the case upon an application for an injunction made to him at chambers. We do not understand that the judge undertook to *decide* any of the merits of the case in which the application was made, but he simply gave as his reason for refusing the motion that, according to his view of the merits, the plaintiff had no ground for his motion; and in this we think there was no error. After Judge Fraser had refused the motion, there was nothing to prevent the

plaintiff from proceeding to have the merits of his case decided. by the proper tribunal having jurisdiction to do so; and this shows conclusively that the judge did not *decide* anything as to the merits; for if he had, the matter would have been *res adjudicata*, which is not and cannot be pretended. As we understand it, all that Judge Fraser undertook to say was, that the case as presented to him was not sufficient, in his judgment, to entitle the plaintiff to the order asked for; and this he unquestionably had a right to say. If, however, the reason upon which his conclusion was based rested upon an erroneous proposition of law, then the plaintiff's remedy was that to which he has properly resorted—by appeal.

This brings us to the next question—whether there was error in holding that the whole matter was *res adjudicata*. There can be no doubt that the case before Judge Hudson was treated by the court and by the parties on both sides simply as an issue under the statute to try the question whether anything, and if so, how much, was justly due *under the alleged liens*, and not as an ordinary action to recover money alleged to be due by the defendants to the plaintiff; whether properly or not, we will consider hereafter. This is manifest from the ruling of Judge Hudson, and is made more manifest by the "Agreed Case," upon which the former appeal was heard, a copy of which is in the present record, and is perfectly obvious from the language used by the late Chief Justice in delivering the opinion of this court upon that appeal. The reasons given by Judge Hudson for his rulings show beyond dispute that he so regarded the · issue he was trying. It is so expressly stated in the "Agreed Case" above referred to. The opening sentence of the opinion of this court is in these words: "This was a proceeding commenced by the plaintiff to enforce an alleged agricultural lien on the crops of the defendant;" and after stating the seizure and sale of the crops, these words follow: "The proceeds were held subject to the decision of the court upon an issue raised by the defendants, 'that the amount claimed by plaintiff was not justly due him in accordance with the latter part of section 2398, Gen. Stat.' This was tried before his honor, Judge Hudson," &c. And again, in considering the second point raised by the former

appeal—that there was error in refusing to admit testimony as to
the amount advanced by plaintiff to the defendants, the Chief
Justice used this language : "Had this been an action to recover
a debt contracted by the defendant for goods and supplies fur-
nished, such evidence would have been relevant and competent,
but such was not the character of the action.  On the contrary,
it was a special proceeding provided by statute for the recovery
of a debt of a certain character and the plaintiff was confined to
that proceeding."

In the face of this, we do not see how it is possible to doubt
that the former proceeding was treated by all parties, as well as
by both the courts before which it was heard, as a special pro-
ceeding under the agricultural lien law, wherein the only issue
would be whether anything, and if so, how much, was justly due
*under the alleged liens*, and the question whether anything was
due to the plaintiff *on any other account* would have been wholly
irrelevant.    This being so, it would certainly be very extraordi-
nary, to say the least of it, to permit either party now to claim
that the court, which had been induced, by the act of the parties
themselves, to try one issue arising under a special statutory pro-
ceeding, had in fact determined other and altogether foreign
issues to that raised by such special proceeding.    It will be
noted that the "Case" *agreed* upon for the hearing of the former
appeal contained no hint even that the proceeding was an ordi-
nary action for the recovery; but, on the contrary, specially
characterized it as a special proceeding under the statute, and
this "Case" was in express terms consented to by defendants'
attorney, who, in his argument of the present appeal, admits that
what he now claims to have been the real nature of the former
proceeding was not made known to the court.

·But more than this: when, in the trial of the issue before Judge
Hudson, counsel objected to the introduction of any testimony
tending to show that the plaintiff had made advances to the de-
fendants, who thereby became indebted to the plaintiff in the
amount of such advances, he thereby necessarily assumed that
the issue on trial was simply an issue under the special proceed-
ing provided for by the statute to determine whether anything was
justly due under the liens, and when the Circuit Court sustained

such objection, it necessarily adjudged that such was the character of the proceeding, and that it was not an ordinary action for the recovery of money ; for if so, then plainly there would have been no foundation whatever for such objection.  From this adjudication, necessarily implied in the ruling of Judge Hudson, there was no appeal, and hence it was conclusive.  But even if it was not, yet when this court expressly declared (italics ours) that the former proceeding was *not* an ordinary action for the recovery of money, but, "*on the contrary, it was a special proceeding provided by statute*" for the recovery of a debt *of a certain character*, *and the plaintiff was confined to that* proceeding, that surely was conclusive and fixed beyond dispute the character of the former proceeding.

We are quite sure that Judge Fraser could not have had the former decision of this court before him when he heard the motion ; indeed, it was scarcely possible that he could have had, for the opinion of this court was filed 2nd of July, 1890, and Judge Fraser probably heard the motion on the 18th of that month, the day on which the rule was returnable, and rendered his decision on the 23rd of July, 1890 ; and after allowing for the ten days during which the *remittitur* is retained, it would not have been more than barely possible for him to have had the opinion before him on the day fixed for the hearing, and scarcely within the bounds of probability that he could have had it when he rendered his decision.

But in addition to this, inasmuch as the statute prescribes no form in which the issue therein provided for to determine whether the amount claimed is justly due shall be framed; and, so far as we know, there being no rule of court or of practice prescribing such form, we do not see why the parties may not resort to any form which will present the issue to be tried.  *Johnstone* v. *Manigault*, 13 S. C., 403.  If they choose the more cumbrous form of a formal complaint, instead of adopting some more simple form, we do not see why they may not do so ; especially when, as in this case, it is perfectly manifest that neither party was misled, and, on the contrary, both parties fully acquiesced in the adoption of the more cumbrous form, a

complaint and answer, to raise the issue provided for by the statute.

The case of *Cheatham* v. *Morrison* (31 S. C., 326), relied on by defendants' counsel, is not in point. In that case certain crops of one Seawright had been seized under a warrant to enforce an agricultural lien, and the same were replevied by him, he giving an undertaking, with the defendants as sureties, under the provisions of the amendment to the lien law, conditioned for the delivery of the property, in case such delivery should be adjudged, and for the payment of any sum of money that the plaintiff might *in that action* recover, and at the same time Seawright gave the necessary notice required by the statute to raise the issue as to whether anything was justly due under the lien. At that point that proceeding was stopped. Some time afterwards Cheatham commenced a formal action by summons and complaint against Seawright to recover a specified sum of money, which proceeded regularly to judgment against Seawright, and when the execution issued to enforce such judgment was returned *nulla bona*, an action was commenced against Morrison and others as sureties of Seawright on the undertaking above mentioned. The court held that the two proceedings were separate and distinct, and that the sureties had a right to stand upon the contract as they made it, which bound them to pay any sum that might be recovered against Seawright in the proceeding under which the undertaking had been entered into, and as nothing had ever been recovered *in that proceeding*, the sureties were not liable. They had no connection whatever with the subsequent action brought by Cheatham against Seawright, and were in no way liable for the judgment recovered therein. It is plain that that decision has no application to the present case. There the court, both Circuit and Supreme, as well as the parties, treated the two proceedings as entirely distinct and separate, while here precisely the reverse is the case.

It seems to us, therefore, that there was error on the part of Judge Fraser, arising doubtless from the fact that the case was not fully presented to him, in holding that the matter was *res adjudicata*, and for this reason his order refusing the motion for injunction must be reversed, with leave to the plain-

tiff to apply again for such injunction so soon as the *remittitur* is sent down to the Circuit Court, and that in the meantime the restraining order granted by Mr. Justice McGowan be continued.

It remains only to consider the appeal from the order of Judge Aldrich, refusing to entertain the case for want of jurisdiction pending the appeal from the order of Judge Fraser. This appeal cannot be sustained. The appeal from the order of Judge Fraser involved a question which lay at the threshold of the case, and while that question was pending in the Supreme Court, the Circuit Court could not assume jurisdiction, as that would have involved the necessity of determining the same question which was then pending in the Supreme Court. The cases cited by the Circuit Judge are amply sufficient to vindicate his conclusion.

The judgment of this court is, that the order of Judge Aldrich be affirmed, but that the ruling of Judge Fraser, that the whole matter is *res adjudicata*, be reversed, and that the case be remanded to the Circuit Court for such further proceedings as may be necessary to carry out the views herein announced, so that both parties may have a full opportunity of establishing their several claims, the one against the other, if they can.