## JACKSON *v.* SEABOARD AIR-LINE RAILWAY.

1. The verdict is supported by the evidence.
2. Where the widow of one who was employed by a railroad company as a flagman to perform service within its switching yards brought suit to recover damages for his alleged tortious homicide by the running of one of the defendant's cars, evidence of the general custom as to the manner of flagging trains at the point where the injury occurred, and of instructions to such flagman as to such custom, was admissible as tending to show that the deceased knew of the custom and the danger to which he was exposed while on duty as a flagman, and whether he exercised that care which an ordinarily prudent man in these circumstances would have exercised for his safety.
3. It is not error for a trial judge, before beginning his instructions to the jury, to tell them of the obligation resting upon the court and upon the jurors in the trial of a case, and to call their attention to the necessity of giving close attention to the law as given them by the court, and to return "a true verdict according to the opinion they entertain of the evidence produced to them, without favor or affection to either party, and according to the law as given in charge by the court."
4. It was not error for the court in charging the jury to read to them the original petition and the amended petition, where the amendment worked a dismissal of the case as to one of the defendants, and the original petition was amended in several other material parts, and where there was no offer on the part of plaintiff's attorneys to remodel the papers, and where the court instructed the jury that the part of the original petition and the amendments that had been stricken were not a part of the plaintiff's statement of the case in writing, and that the pleadings would go out with the jury, and explained to them how the amendments were related to the original petition.
5. In view of the evidence as to the character and surroundings of the locality where the injury occurred, it was not improper for the court to submit to the jury the question of whether a municipal ordinance regulating the speed of trains within the city limits was applicable at that particular locality.

6. None of the charges complained of embody any error requiring a new trial.

JULY 18, 1913.

Action for damages. Before Judge Ellis. Fulton superior court. July 25, 1912.

*Westmoreland Brothers,* for plaintiff.

*Brown, Randolph, Parker & Scott, W. G. Loving,* and *Moore & Pomeroy,* for defendant.

HILL, J. Mrs. Ruth Jackson, then a minor, by her next friend brought suit against the Western & Atlantic Railroad Company and the Seaboard Air-Line Railway, to recover damages for the homicide of her husband, W. P. Jackson, alleging that by the concurrent negligence of both defendants her husband was killed. The case against the first-named defendant was dismissed, and an order taken amending the petition against the Seaboard Air-Line Railway; and the case was tried solely against the latter. The trial resulted in a verdict for the plaintiff for $2,500. Being dissatisfied with this verdict, the plaintiff made a motion for a new trial, which was overruled and she excepted.

1. The first ground of the motion is that the verdict is inadequate and is not sustained by the evidence. It is argued that if the plaintiff is entitled to recover at all, she ought to recover a sum in excess of $2,500, and that there is no evidence to support the amount found by the jury. Our Civil Code, § 2781, provides: "No person shall recover damage from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to him." There was evidence tending to show that the plaintiff's husband was killed under circumstances which showed negligence on his part and on the part of the defendant. The jury, therefore, were authorized to find that the recovery should be decreased in proportion to the contributory negligence of the husband in causing his death. We think the verdict is supported by the evidence.

2. The 4th to the 14th grounds, inclusive, of the motion for a new trial complain that the court erred in overruling objections to certain evidence offered by the defendant as to "the universal custom out there at this locality in those yards as to what a flag-

man should do in order to protect the rear of his train." The numerous questions objected to varied as to form, but nearly if not all of them related to "the custom" as to the duty of a flagman in the locality where the homicide occurred, and what instructions were given to the deceased.flagman as to "the dangers surrounding yard work and places that he would have to look out for." It is insisted that the court erred in allowing the questions and answers as to the custom of flagging trains, and in allowing witnesses to testify as to what a flagman should or should not do, or that the engineer would not pay any attention to flagmen on any other track than the one on which his train was. The plaintiff offered the evidence of several witnesses, which tended to show that the plaintiff, in the line of his duty, was correctly flagging the train, and that he was on the right track. It was competent, therefore, for the defendant to show what the general custom was in the yards where the homicide occurred, with reference to flagging trains, and that the plaintiff's husband had been instructed as to and knew of the custom about which the witnesses testified, and that it was a violation of that custom for him to be on a railroad track other than the one on which his train was. This evidence was admissible as tending to show that the deceased, knowing of the custom and of the daily and hourly danger to which he was thus exposed while on duty as a flagman, should have exercised that care which an ordinarily prudent man would have exercised for his own safety.

3. Complaint is made of the following preliminary instruction to the jury: "There are obligations upon the court and upon the jurors in the trial of a case. The obligation on the jury is under the solemn oaths they take, to find a true verdict according to the opinion they entertain of the evidence produced to them, without favor or affection to either party, and according to law as given in charge by the court. The law imposes upon the judge the solemn duty to exercise his best and most impartial skill and ability in giving you the law. Now I mention this feature of the matter particularly because it is entirely impossible for a jury to deliver a true, conscientious, and proper verdict in a case where they do not listen to the charge of the court. It is not only a matter of duty, but it is a matter of respect to the judge, that the jurors will do their best to understand the law as he gives it in charge. You understand the law is a very difficult proposition; lawyers don't

understand it perfectly, and courts conscientiously differ about what it is. But you must take the law as given you by the court. The responsibility of finding the truth of a case rests upon your consciences; the responsibility of giving you the true law of a case rests on mine. In the nature of things, in considering the law as given you by the court, it is well not to pick out any isolated parts of the law as given you, but to try to recollect the whole charge, and see how one part of it is related to another; because it would be impossible for the judge to give you in a paragraph, in a sentence or a page, all of the law that would relate to and be applicable to a case of this kind." It is insisted by the plaintiff in error that this preamble to the judge's charge was error calculated to prejudice the plaintiff's case at the beginning of his instructions to the jury; that it was equivalent to saying to the jury that the plaintiff's case would appeal to their sympathy, and they would be inclined to find a verdict for her, that she was not entitled to recover, and that the court would warn the jury against making such a mistake, etc. We do not think that the instructions of the court complained of are susceptible of the construction placed upon them. We do not see how it could prejudice the plaintiff's case any more than it would the defendant's case for the court to call the attention of the jury to the obligations resting upon the court and upon the jury and admonish them of the necessity of finding "a true verdict according to the opinion they entertain of the evidence produced to them, without favor or affection to either party, and according to law as given in charge by the court," etc. Indeed, we fail to see how it was prejudicial to either side. All that was said by the learned judge would apply as well to the defendant as to the plaintiff. *McDuffie* v. *State,* 121 *Ga.* 580 (13), 581 (49 S. E. 708); *Lyles* v. *State,* 130 *Ga.* 294 (5), 302 (60 S. E. 578); *Beck* v. *State,* 76 *Ga.* 452 (5).

4. The 16th ground of the motion for a new trial alleges error because the court read to the jury plaintiff's petition as originally filed. The original suit was against two defendants. Before the trial of the case the petition was amended by order of the court in several material parts, which worked a dismissal of the case as to one of the defendants, and the case was tried on the petition as amended against the other defendant. It is insisted that the court should have called the attention of the jury to the pleadings as

amended, and that his failure to do so prejudiced the plaintiff's case. The court instructed the jury that the petition had been amended, and also told them that the pleadings would be out with them. He also read the pleadings which had been stricken by amendment, and the other allegations which had been substituted and on which the case was tried. It is argued that this was confusing to the jury, and was error calling for reversal. To this ground of the motion for a new trial the court appends the following note: "The pleadings in this case, as will be shown by the record, are voluminous. They will show that the plaintiff first charged negligence on the Western & Atlantic Railroad; that was the major defendant, and the Seaboard Air-Line Company the minor defendant. The pleadings were amended so as to strike the Western & Atlantic Railroad from the case, and during the progress of the trial the defendant, the Seaboard Air-Line Railway Company, put in evidence, as admissions, some of the pleadings which had been stricken by amendment. During the argument of the case, counsel for defendant pressed upon the jury the idea that the plaintiff had laid her case in one way, prominently against one railroad, and when the hand of that railroad was disclosed she changed her mind, and, seeking somebody to hold liable, practically changed her whole case and charged it up to the Seaboard Air-Line Railway Company. In other words, the insinuation to the jury was plain and palpable that the plaintiff had doctored her case, and had manufactured testimony to suit its new condition. In view of all these facts, and in view of the further fact that the court had no power to mark out what had been stricken, and in view of the fact that the whole pleadings had to go to the jury, the judge concluded that the best way to get it properly before them was to read the petition as it originally stood, and then read the amendments, and show how they were related to the original petition, and then to tell the jury that part of the original petition and the amendments that had been stricken were not a part of the plaintiff's statement of the case in writing. I respectfully say that, in order to understand the situation which called for laborious work on the part of the court, reference must be had to the original pleadings. There was no offer made by plaintiff's attorneys to remodel the papers, no offer made to conceal any part of the petition that had been stricken; and the matter was left before the judge to use his best discretion in letting

the jury understand how the case stood as to pleadings when he was submitting the law in respect thereto." We take it that the jury was one of average intelligence; and as the court read both the stricken and substituted amendments, both of which were in the jury-room when they considered and made their verdict, we fail to see that the conduct of the judge in this respect was prejudicial to the plaintiff. In fact, we think the court could hardly have done otherwise than as stated in his note to the ground of the motion for a new trial.

5. The following charge of the court is assigned as error: "The plaintiff has introduced in evidence an ordinance of the City of Atlanta regulating the speed of railway trains within the corporate limits. The court decides as a matter of law that such an ordinance would be reasonable, but whether it was reasonable and applicable to the time and place where it is alleged this injury occurred is for you to consider and determine along with other evidence in the case." This charge is attacked as erroneous, for the reason that it was for the court to decide whether the ordinance was reasonable and valid, and, having so decided, it was error to allow the jury to say whether or not the ordinance was reasonable and applicable to the time and place where the injury occurred. In the case of *Central R. Co.* v. *Brunswick &c. R. Co.,* 87 *Ga.* 386 (13 S. E. 520), it was held: "If a city ordinance regulating the speed of trains embrace in its language the whole area of the city, and is reasonable in itself, the court may submit to the jury the question as to whether, on account of the special local conditions and surroundings, it would or would not reasonably apply to the particular locality in question, that locality being just inside the city limits." There was evidence tending to show that the place where the homicide occurred was near the city limits and was used exclusively as railroad property, and that there were no crossings or crosspaths at this place, but that the property was used entirely for railroad purposes. Whether the ordinance was reasonable as applied to this particular locality, under all the circumstances of the case, the court left to the jury. There was evidence tending to show that a greater rate of speed was habitually maintained at the place where the injury occurred, and that this was well known to the plaintiff's husband; and the question as to whether the ordinance was reasonable as applicable at the point where the injury occurred was not improperly left to the jury.

6. In some instances error was assigned on charges to the effect that in certain events the plaintiff could not recover at all. As the jury found that the plaintiff was entitled to recover, and these charges do not seem to affect the measure of damages in case of recovery, it is not apparent that these charges were injurious to her, even if in some particulars there were slight inaccuracies. In at least one of the charges complained of—that relating to the status of a person voluntarily lying down upon a railroad track—the charge was apparently more favorable to the plaintiff than she was entitled to have given. In view of the fact that the plaintiff obtained a verdict of $2,500 and her dissatisfaction is that the verdict is too small, and in view of the evidence and the general charge, we do not think there is anything in the charges mentioned requiring a new trial. Nor do we think it would serve any good purpose to set out each of these charges at length and repeat the discussion as to them separately. We have spent much time in considering the voluminous record in this case and all the assignments of error, and the authorities cited, as well as others, and reach the conclusion that no legal reason has been shown why the verdict should be disturbed. *Judgment affirmed. All the Justices concur.*