## 42802. MOORE et al. v. STATE HIGHWAY DEPARTMENT.

ARGUED MAY 1, 1967—DECIDED NOVEMBER 29, 1967—REHEARING DENIED DECEMBER 19, 1967—CERT. ▮▮▮▮▮▮▮

*Camp & Stanford, E. H. Stanford, Zachary & Hunter, William E. Zachary, William E. Zachary, Jr.,* for appellants.

*George P. Dillard, Herbert O. Edwards, Robert E. Mozley,* for appellee.

PANNELL, Judge. The State Highway Department brought a condemnation action in rem against 0.107 of an acre of land composed of separate parcels or strips on the north and south sides of Glenwood Avenue in DeKalb County for the purpose of widening this street. Named as defendants were Mrs. Idoma J. Hicks Moore, Sinclair Refining Company, Atlanta Federal Savings & Loan Association, Forrest E. Huff, E. T. Lee, J. B. Cooley, Glenn E. Hicks, Curtis O. Hicks, Phoenix Atlanta Construction Company, Betty Bowen, Howard Robinson, Henry G. Short,

Reginald L. Bennett, E. E. Michael, and the City of Atlanta. Mrs. Moore answered that she was the sole owner of the two tracts from which the condemned parcels were being taken subject to loans and leases thereon. Pitch 'N Putt, Inc., answered claiming to be the lessee of the south tract. The assessors awarded to Mrs. Moore "and unrepresented condemnees" $44,000 and Pitch 'N Putt, Inc., Glenn Hicks, Jr., and Curtis O. Hicks were awarded $62,000. The award of the assessors was appealed by the Highway Department to a jury in the superior court. Both Mrs. Moore and Pitch 'N Putt, Inc., made motions for separate trials on the ground that to try the two cases together as to the damage to the various parties would be confusing to the jury and would deny them due process of law. These motions were overruled. The trial was had and concerned only the damages to Mrs. Moore as the owner in fee of both parcels and to Pitch 'N Putt, Inc., as the lessee of one of the parcels. The jury found a verdict for Mrs. Moore of $12,026 for the land taken and $13,100 consequential damages. The verdict in favor of Pitch 'N Putt, Inc., was for $2,400 for consequential damages. Separate motions for new trial by Mrs. Moore and Pitch 'N Putt, Inc., were overruled and they filed a joint appeal to this court. See Section 15 of the Appellate Practice Act (Ga. L. 1965, pp. 18, 30; *Code Ann.* § 6-811).

1. Where a condemnation suit involves two parcels of land separated by a street, both of which parcels are owned by one person but one of the parcels is leased to another party, and separate motions are made by both parties for separate trials as to each piece of property, and as to the one leased a separate trial as to the damage to the lessor and as to the damage to the lessee, and the trial judge overruled both motions, we cannot say that there was an abuse of discretion, the motions being predicated upon the ground that the trial of the issues would be confusing to the jury under the circumstances. The condemnation statute under which the proceeding was brought contemplates the joint trial and determination of the damages to the respective tracts and parties in cases such as this. See Ga. L. 1961, p. 517, et seq. (*Code Ann. Ch.* 36-13). While there is no language in the statute that prevents the separation

of the various tracts and parties for the purpose of trial, it does not require that this be done. The only authority relied on by appellant is Gwathmey v. United States, 215 F2d 148 (5th Cir.), which case involved 236 tracts or parcels and those represented by 12 different law firms. There is an obvious difference between that case and the one now before the court.

2. Where a witness testifying as to value in a condemnation case begins his testimony by stating that his evidence as to value relates to the time of taking, giving a specific date, which time was stipulated between the parties, and on cross examination it appears that his chief examination of the property had been made over three months later when his appraisal was actually made, such disclosure does not prevent his testimony from having probative value as of the date of the taking where the witness testifies as to his familiarity with the particular property as of the date of taking. The refusal of the trial judge to exclude this witness's entire testimony on the ground that his opinion as to value did not relate to the time of taking was not error.

Where the same witness testifies that he was familiar with the premises prior to making his appraisal but did not go into the buildings on the premises until making his appraisal as to value and as to damages, and where the physical taking involved a portion of land only, adjacent to a public road, upon which portion neither the buildings nor any part of the buildings stood, and where the witness testified that he would not have noticed any changes on the inside of the buildings between the time of taking and the time of his appraisal, but would have noticed any on the outside, and that there were no changes on the outside although there might have been minor changes on the inside, and the evidence does not disclose any changes were made, such testimony is not without probative value. The decision in *Ga. Power Co. v. Livingston*, 103 Ga. App. 512 (2) (119 SE2d 802) is not controlling here. In the case cited the witness had never been inside the house involved which was being competely taken by the condemnation, whereas in the present case it appears only that the witness had not gone in

the buildings on the date of the taking of a portion of the parking area adjacent to the buildings.

3. Enumeration of error 3 of appellant Moore that "the court erred in admitting certain testimony of witness Ansel W. Paulk over objection of appellant, relating to the method whereby said witness determined consequential damages to the property not taken," is not supported by the record. No such objection was made. That portion of the transcript quoted by appellant Moore in her brief in arguing this enumeration does not show any such objection to the testimony of the witness nor any ruling by the court on such an objection.

4. While, as to the objector, the erroneous *admission* of evidence is harmless where similar evidence has been admitted without objection, such a rule cannot be converted into a rule that where evidence is admitted without objection it shall be erroneous to rule out similar evidence upon objection made thereto. Merely because the *admission* of the evidence, under the circumstances, would have been harmless, if error, does not make *error* the *exclusion* of such evidence under the same circumstances. The enumeration of error, that for this reason it was error to exclude parol evidence relating to the contents of the written lease upon objection of appellee, is without merit.

5. Whether or not the evidence would have authorized a finding of no damages as to Pitch 'N Putt, Inc., the charge to the jury as to the form of their verdict does not affect the measure of damages, and if error, was harmless for the reason that the jury did find some amount as damages to the leasehold of Pitch 'N Putt, Inc. *Jackson v. Seaboard A. L. R.*, 140 Ga. 277, 283 (6) (78 SE 1059); *Stynchcombe v. Gooding Amusement Co.*, 110 Ga. App. 864, 867 (4) (140 SE2d 232).

6. Pitch 'N Putt, Inc., the sole stockholders of which were Mrs. Moore, her two sons, Glenn E. Hicks and Curtis O. Hicks and the wife of one of them, contends that the jury's award of $2,400 consequential damages was unauthorized by the evidence and that an award of $7,000 was the minimum amount the jury was authorized to find under the evidence. Pitch 'N Putt, Inc., had a lease, conveying only a usufruct for a period of ten years with the privilege of renewal for ten additional years

for the operation of a retail beer store and a grocery store which had approximately 6 years and 4 months to run on the initial 10 years at the time of the taking. The lease covered certain buildings facing on Glenwood Avenue and a parking area between the buildings on Glenwood Avenue and parking area to one side of the buildings and directly to the rear of the side parking area, the parking area being in the shape of an L. The direct evidence as to damaged leasehold on the south tract was estimated as high as $35,000 by one of the witnesses; however, in our opinion, the evidence also authorized the award of the jury in the amount found. The primary contentions of Pitch 'N Putt, Inc., related to (1) the reduction in business profits during the construction and after the completion of improvements, (2) the damage to the leasehold because of the loss of parking spaces caused primarily by taking the strip adjacent to Glenwood Avenue and, (3) damage to the leasehold because of the limitation of the right of ingress and egress after completion of the improvements.

The evidence as to reduction in net profits, sometimes amounting to net losses, during the period of construction did not demand a finding that such reduction in profits and such losses were caused by the construction of the road and the resulting decrease in patronage, if any, so caused. The jury was authorized to find to the contrary.

The evidence shows that construction work on the widening of the road started in October, 1964, and continued through September, 1965. Evidence was given by the appellant as to the gross sales from the retail beer store operated by the appellant. This was given in figures for each month. A comparison of the "before the work" 12 months with the "during the work" 12 months discloses that, the year before, volume of sales amounted to $355,479.63 and the year of work gross sales were $351,484.14, a loss in gross sales of $13,995.49. This is approximately a 4% decrease in sales for the year of work. The profit and loss testimony for the year before shows a net profit of $32,855.25 after paying all operating expenses including salaries of $34,400 to two of the stockholders, which salaries were paid each year. The year of work figures show a net profit

of $5,263.02, a decrease in net profits of $27,592.24 over the year before, although the only possible reduction which could have been caused by the work was the profit lost on $13,995.49 of gross sales. Shedding further light on the absence of correlation between gross sales and loss of profits claimed is the testimony as to the months of October, November and December (1964) during the work and these same months immediately after (1965) the construction was completed. For these months, during the work (1964), sales were $85,558.75 with a net profit of $2,960.29. For these identical months immediately after the work was completed in the following year (1965) the gross sales were increased to $93,027.25, but the figures relating to profit and loss show that during this period of increased sales the net loss was approximately $32,422.50.

The jury was authorized to find that the approximately 4% decrease in sales during the construction work as compared with the sales prior thereto was a normal fluctuation in business, and that any decrease in sales after the construction as compared with the year before construction (the months of January, February, March and April showed a decrease) was due to a competing retail beer store which was operating within approximately 100 feet of the beer store of Pitch 'N Putt, Inc. There was no evidence showing any loss in rentals to this lessee. Under these circumstances it is unnecessary to determine whether the temporary loss of business profits caused by proper and non-negligent construction work impeding traffic and ingress and egress during the widening of the road are recoverable either as damages caused by the taking or consequential damages arising therefrom, or consequential damages arising from the project itself (see Encyclopedia of Georgia Law, Vol. 10, p. 384 et seq., Eminent Domain, Sections 70, 71, 72; *Bowers v. Fulton County*, 221 Ga. 731 (146 SE2d 884)); nor is it necessary to determine whether a recovery for temporary loss of profits must be had in the condemnation case or by suit against the responsible parties if the construction of the road took an unreasonable length of time or the progress of the work was so negligently planned or done as to cause temporary loss of customers because of temporary inconvenience or temporary lack of access,

and this caused the loss of profits. See *Atlanta Terra Cotta Co.
v. Ga. R. &c. Co.*, 132 Ga. 537 (5) (64 SE 563); *Central Ga.
Power Co. v. Mays*, 137 Ga. 120 (4) (72 SE 900); *McCrea
v. Ga. Power Co.*, 46 Ga. App. 276 (3) (167 SE 540).

Was the award of the jury to the lessee Pitch 'N Putt, Inc.,
unauthorized because the evidence as to the damage to the
leasehold caused by the taking of parking spaces and the change
in the ingress and egress, demanded a finding for a larger sum?

There was evidence that out of 28 parking spaces in front
of the buildings and between the buildings and Glenwood Ave-
nue, 7 to 17 were lost as a result of the widening of the road.
There was practically no testimony as to the remainder of the
parking area, or its capacity. There was evidence, however,
that by rearranging the front parking there would be a net
loss of 7 on the front. One of the witnesses testified that these
7 parking spaces damaged the leasehold to the extent of $1,000
per parking space, a total of $7,000. Another witness testified
that the spaces were worth $500 per year for the term of the
lease. Another witness estimated the parking spaces were worth
$500 per year per business. Another witness estimated the
damage to the leasehold as $35,000, but gave no details as to
how he arrvied at that figure except that it was his opinion
as to the amount of the consequential damages which he thought
should be allocated to the leasehold rather than the owner.
There was considerable testimony that the loss of these parking
places caused inconvenience to customers and a loss in business
for the grocery store. There was also testimony that prior to
the widening of the road the parking area was never full, even
during rush hours, and that the retail beer store even in the
rush hours had only 3 or 4 cars parked at any one time. There
was no evidence that there was an overflow in excess of the
parking capacity. Under these circumstances the jury was au-
thorized to find that there was no damage or only nominal
damage, to the leasehold because of the loss of these parking
spaces.

There was a sharp conflict in the evidence relating to any
damages occasioned to the leasehold by the claimed changes in
ingress and egress to the parking area, some of the witnesses

testifying that the parking and the ingress and egress to the parking area and the businesses were much more inconvenient and undesirable, and others testifying that the arrangements for ingress and egress were much more desirable and convenient. The evidence described in detail the changes in the ingress and egress. Under these circumstances the jury was authorized to find that there were no damages, or merely nominal damages to the leasehold by reason of any such changes.

A number of the witnesses gave detailed data and figures in arriving at the value of the land taken and the consequential damages to the remainder, most of this however referring to estimates as to the damages to the owner, rather than to the leasehold. There was evidence as to the economic rent value of the lease and the buildings covered by it as well as what the buildings were actually rented for by the lessee. There was detailed evidence for comparison as to gross sales and profits and losses of the beer business. There were round figures given as to the gross business done by the sublessee of the grocery store. There were pictures of the premises taken during the widening and the construction of the road. From all of this evidence the jury was authorized to reach an opinion as to the damages to the leasehold different from those of the witnesses themselves, the jury having substantially the same data and information used by the witnesses in arriving at their opinions. See *Housing Authority of Decatur v. Schroeder,* 113 Ga. App. 432, 435 (3) (148 SE2d 188).

The award to the owner was within the range of the opinion evidence, and was therefore authorized.

*Judgment affirmed. Whitman, J., concurs. Bell, P. J., concurs in the judgment only.*