# CASES

### DECIDED IN THE

# SUPREME COURT OF GEORGIA

#### AT THE

## OCTOBER TERM, 1912

---

### CENTRAL GEORGIA POWER COMPANY *v.* CORNWELL.

1. Primarily, the question of the competency of a witness to testify is a preliminary one for the trial court.

(*a*) A witness is competent to testify as to the market value of farm land, if he has had an opportunity for forming an opinion as to its value.

2. The general rule is that instructions by the court to the jury must be warranted by the evidence.

(*a*) Where instructions are given that are not warranted by the evidence and are calculated to mislead and confuse the jury, the error requires a new trial.

3. An appeal from an award of assessors appointed in condemnation proceedings under the Civil Code, §§ 5206 et seq., is a de novo investigation, and the defendant in such proceedings may file an appropriate legal defense thereto.

(*a*) In such a case, where the condemnor had described the entire tract of land of the condemnee, out of which it was proposed to take the condemned land, as containing 125 acres, it was not error for the court to refuse to strike a portion of the condemnee's plea which averred that the tract contained 175 acres, instead of 125 acres as alleged by the condemnor, which would be affected by the taking of the land specified in the notice.

NOVEMBER 14, 1912.

Condemnation of land. Before Judge J. B. Park. Jasper superior court. November 28, 1911.

*Walter T. Johnson, Greene F. Johnson,* and *Hatcher & Smith,* for plaintiff. *W. S. Florence,* for defendant.

HILL, J. The Central Georgia Power Company instituted proceedings to condemn certain land belonging to the defendant, Mrs. Cornwell, under the Civil Code, §§ 5206 et seq. The assessors awarded her the sum of $2,400. An appeal from the award was taken to the superior court, and on the trial of the case there the jury returned a verdict for $4,000 against the condemnor. A motion for a new trial was overruled, and the condemnor excepted.

1. It will be unnecessary to quote, or discuss separately, each assignment of error contained in the record. There are numerous grounds of the motion for a new trial, to which the principles of law here ruled may be applied as demanded. Three controlling questions are presented for decision. (1) The competency of witnesses to testify as to the value of land taken, and consequential damages to other property, in cases where corporations are authorized by law to take or damage private property for public uses. (2) Whether certain charges given by the court, which, though correctly stating abstract principles of law, were not authorized by the evidence, constituted harmful error requiring a new trial. (3) Whether the court erred in overruling the motion to strike paragraph 2 of the special plea offered by the defendant upon the trial of the appeal.

It is unnecessary to discuss the different elements to be considered in arriving at the "market value" of the property actually taken, or the rule as to "consequential damages" naturally and proximately occasioned to the remainder of the owner's property by the taking of that part which is condemned, etc. For a discussion of these questions, see *Central Georgia Power Co.* v. *Mays*, 137 *Ga.* 120, 123 (72 S. E. 900). Nor is the question of consequential benefits involved in this case, under the facts. The real question here is as to the competency of certain witnesses who testified concerning the market value of the land sought to be condemned. One of the witnesses for the defendant testified: "In my opinion the market value of the defendant's bottom land per acre in November of last year was $125, may be $150, somewhere along there." Counsel for the condemnor moved to exclude this testimony, on the following ground: "The testimony of the witness reveals that he does not know and is not acquainted with the market value of land in the community where this land sought by the company is situated. Upon the subject of the market value of

land in the particular community where this land is situate, the witness testified as follows: 'I can't say that I am very well acquainted with the bottom lands and other lands of Mrs. Cornwell. I have seen them, last November the day of the arbitration, and went over the bottom lands the company propose to take. They were pretty fair land, I thought. I live some ten miles from this land. Last fall was the first time I was ever on it. I have been by it several times. I do not know anything about how lands usually sell in that community. I know that a place sold some years ago at $20 an acre. I live in the Palalto community. I have never known any land to sell in that community for $100 an acre. The land I referred to as selling for $20 an acre was all upland, I think, and the sale was made some 6 or 7 years ago.' "

What is the rule as to the qualification of witnesses testifying to the market value of land, and how is market value proved? In Lawson on Expert & Opinion Evidence (2d ed.), 469, it is said: "The market value of land is not a question of science and skill upon which only an expert can give an opinion. Persons living in the neighborhood may be presumed to have a sufficient knowledge of the market value of property from the location and character of the land in question. Therefore, except in one State, it is held that the value of real property may be proved by the opinion of ordinary witnesses on the subject." And, in treating directly of the subject of qualification to testify, the same author, on p. 373, says: "The witness must show some knowledge of the land in question, and the price of land in the neighborhood, to be qualified to give an opinion on the subject. . . One who is acquainted with values in the vicinity, although he has no personal knowledge of the particular property to whose value he testifies; one who has personally examined the property and made inquiries as to the value, though he does not live in the city where the land is located," are given as instances where witnesses have been adjudged to be qualified. Also, on p. 474, other instances are given as "One who has resided upon and owned real estate for twenty years, and is acquainted, from hearsay, with the recent sales of land in the vicinity, and the prices paid therefor; . . witnesses who reside near the land and are familiar with its value, as well as the value of other lands in the neighborhood." Quoting further from the same author (pp. 474-475): "On the other hand, the following

have been held not qualified: Persons who are shown merely to have 'heard' of sales in the neighborhood, without stating how, where, or from whom, and do not profess to have a knowledge of what lands are generally held for sale in the neighborhood; one whose knowledge of the market value of real estate is gathered from what others told him, and from facts coming under his observation in a visit of six days to the place of its location, one and one half years after the transaction in question; a witness who is acquainted only with the value of the gas plant and of gas structures and machinery generally, and does not know the value of the land owned by the company, or of land in its vicinity; one whose only knowledge was limited to a period eight years earlier; one who has never seen the property or been in the neighborhood; one who has resided near the lands, but in another town, for twenty-nine years, and had for eleven years been an assessor of taxes, not having dealt in real estate in the town in question, nor near where the lands were located, but knew of sales near the land in question. An essential test, it is said, of the competency of witnesses to give an opinion as to the value of land is that they affirmatively appear to have personal knowledge of the subject-matter of the inquiry." (There is also authority to the effect that farmers are experts as to the value of farm lands and its products. See Lawson (supra), 472, and cases cited.) But a witness, in order to be qualified to testify as to the market value of land, need not be a dealer in land. 1 Wigmore on Ev. § 474. In the same section, subdiv. (4), this author says: "Occasionally all specific limitations or tests are abandoned, and the broad test adopted that 'any person having knowledge of' or 'acquainted with' the values may testify; the determination of the qualification thus being left open for each case. This is perhaps the most satisfactory and sensible test, provided the application of it be left entirely to the discretion of the trial judge." It is said in Lawson's Exp. & Op. Ev. (2d ed.) 468: "As in the case of other opinion evidence, the qualification of a witness to express an opinion as to value is a preliminary question for the trial court, whose decision will not usually be disturbed on appeal." Our Civil Code, § 5875, declares: "Direct testimony as to market value is in the nature of opinion evidence. One need not be an expert or dealer in the article, but may testify as to value, if he has had an opportunity for forming a correct opinion." And see

*Southern Cotton Oil Co.* v. *Overby*, 136 *Ga.* 69, 72 (70 S. E. 664);
*Central R. Co.* v. *Wolff*, 74 *Ga.* 664; *Selma &c. R. Co.* v. *Keith*, 53
*Ga.* 178 (6), 181; *Miller* v. *Luckie*, 132 *Ga.* 581 (64 S. E. 658).
In 3 Chamberlayne's Mod. Law of Ev. § 2099e, the author says:
"The indispensable and sufficient qualification of a witness who un-
dertakes to testify as to the fact of market value is that he should
know what it is. Proof on this point must be affirmatively made to
the satisfaction of the court, unless the circumstances disclosed in
the case may warrant the presiding judge in assuming provisionally,
as an administrative matter, that such qualifications exist. A
claim to knowledge may reasonably be regarded as prima facie
sufficient."

It seems clear, from the authorities cited above, that a witness
is qualified to testify to the market value of land, "if he has had
an opportunity for forming a correct opinion" as to its value.
Primarily, the competency of the witness to testify as to market
value is for the court. If a witness living at a distance from the
land sought to be condemned had no opportunity for knowing the
value of land in that community, or of the particular land in con-
troversy, he would be incompetent to testify as to its value. The
witness whose evidence was objected to having testified as to more
or less knowledge of the land in controversy and its value, and the·
market value of other lands in the vicinity of that in controversy,
the court did not abuse his discretion in allowing the testimony to
go to the jury, to be given such weight as they saw fit.

2. The general rule is that instructions given by the court to
the jury must be based upon evidence. And it is error for the
court to give instructions to the jury that are not warranted by the
evidence. "A charge is objectionable which states general princi-
ples correctly, but which are nevertheless not applicable to the
facts as proven. The instructions should always be given in ref-
erence to the evidence in the particular case." *Gorman* v. *Camp-
bell*, 14 *Ga.* 137. In delivering the opinion in the case just cited,
Judge Lumpkin said (p. 142): "Nothing is more dangerous than
to lay down general propositions, which, instead of aiding, scarcely
ever fail to mislead juries. Courts should apply the principles of
law to the facts in evidence in each particular case; stating those
facts hypothetically." A charge may be abstractly correct; but
unless it is authorized by the evidence in the case, it is nevertheless

erroneous. *Butt* v. *Maddox, 7 Ga.* 495 (3) ; *Towns* v. *Kellett,* 11 *Ga.* 286 (2), 293. This court has held to the above-stated effect in numerous cases. See 7 Michie's Dig. Ga. R. 570-571.

The charges complained of in the 4th, 5th, 10th, 11th, and 12th grounds of the motion for a new trial in the present case were not warranted by the evidence, and therefore, under the repeated rulings of this court, were erroneous. It is argued that if these charges were erroneous, they were harmless, as the jury only considered the value proved for one purpose, namely, the agricultural value. We have no means of knowing that the jury so limited themselves, and can not say, as matter of law, that the instructions complained of were harmless. They were probably confusing and misleading to the jury, and require a new trial.

3. The court did not err in overruling the motion to strike paragraph 2 of the defendant's plea, which was as follows : "Denies that the acreage of her land is properly set out. That instead of one hundred and twenty-five acres of land, as specified in petition, she has one hundred and seventy-five acres which will be affected by the back water and taking as specified in petition, for which consequential damages are asked as well as actual damages for part taken." It is argued that the only question that could be considered by the court, on the trial of the appeal, must relate to the land described and set out in the original notice of intention to condemn. But to this contention we do not agree. An appeal from an award of assessors appointed in condemnation proceedings under the Civil Code, §§ 5206 et seq., is a de novo investigation, and the defendant in such proceedings may file an appropriate legal defense thereto. In such a case, where the condemnor had described the entire tract of land of the condemnee, out of which it was proposed to take the condemned land, as containing 125 acres, it was not error for the court to refuse to strike a portion of the condemnee's plea which averred that the tract contained 175 acres, instead of 125 acres as alleged by the condemnor, which would be affected by the taking of the land specified in the notice. See Civil Code, §§ 5014, 5630, 5632, et seq. We think that the condemnee is entitled, not only to just and adequate compensation for the land actually taken by the condemnor and described in the notice, but also to the consequential damages to the remaining parts of the tract of land belonging to her. This being so, the

court did not err in overruling the motion to strike paragraph 2 of the plea, above quoted. See *McCall* v. *Fry,* 120 *Ga.* 661, 663 (48 S. E. 200); *Wynn* v. *Wynn,* 109 *Ga.* 255 (34 S. E. 341); Alabama Central R. Co. *v.* Musgrove, 169 Ala. 424 (53 So. 1009).

*Judgment reversed. All the Justices concur.*