## 18304. PERRY *v.* HODGSON.

1. Though sharply conflicting, the evidence supports the verdict, and the general grounds of the motion for a new trial are not meritorious.
2. Looking to the whole record, grounds 1, 2, and 3 of the amendment to the motion for new trial, complaining that certain excerpts from the charge of the court were not supported by the evidence, disclose no reversible error, for the reason that it is not probable that the jury were misled or confused by such instructions, or that the plaintiff in error was injured thereby.
3. Under the pleadings, the evidence referred to in grounds 4 to 18 inclusive was properly admitted by the court.

DECIDED NOVEMBER 15, 1927.

Appeal and Error, 4 C. J. p. 908, n. 63; p. 912, n. 77; p. 1033, n. 37.
New Trial, 29 Cyc. p. 787, n. 92; p. 788, n. 3; p. 789, n. 4; p. 824, n. 41; p. 827, n. 45.
Physicians and Surgeons, 30 Cyc. p. 1586, n. 63, 64, 66.
Trial, 38 Cyc. p. 1617, n. 34; p. 1618, n. 36; p. 1778, n. 73; p. 1779, n. 75, 76.

Action for damages; from city court of Decatur—Judge Guess. June 2, 1927.

Application for certiorari was made to the Supreme Court.

*Branch & Howard, Colquitt & Conyers,* for plaintiff.

*L. J. Steele, Hugh Burgess, Bryan & Middlebrooks,* contra.

LUKE, J. William Joseph Perry, a minor eighteen years of age, by his father and next friend, James A. Perry, brought an action for damages against Dr. F. G. Hodgson. The jury rendered a verdict for the defendant, and the plaintiff excepted to the judgment of the court overruling his motion for a new trial.

Omitting the formal parts, the petition may be summarized as follows: When plaintiff was a small boy he suffered from a bone infection of the spine, for which he received surgical treatment that arrested the disease and left him with some lameness in his left leg, but with the ability to ride a bicycle or motorcycle, drive an automobile, and do most other things that a normal boy could do. In 1925, the plaintiff had not suffered from the said disease other than a slight limp for six years, the said infection was under control, and he could do the things usually done by a boy of his age. Defendant, whose son was a close friend of plaintiff, often saw plaintiff, and on one occasion said to him: "I want to perform a slight operation on you, and straighten your leg. There is no use in your going through life lame." Two weeks later the defendant repeated the same statement to the plaintiff and requested that plaintiff's father come to see defendant about the said operation. Plaintiff's father called to see defendant, who said that he had such conversation with plaintiff and that he was very anxious to operate, and stated to plaintiff's father in substance what he had already told plaintiff. Defendant further said "that he would perform a minor operation by going under the skin and clipping some leaders and muscles, which would straighten plaintiff's leg; that he would have plaintiff on crutches in three weeks after the operation and completely well in six weeks." Defendant had been associated with the surgeon who had treated plaintiff for said affection, and was familiar with his condition. At said interview plaintiff's father told defendant "that in said operation it would never do to go anywhere near plaintiff's hip-joint or the 'track' through which said controlled infection drained." Defendant said that he would not do so, "that he

was just going under the skin and clip some leaders and muscles, and the operation would not require more than twenty to thirty minutes." After thinking about the matter further, plaintiff's father went to defendant about two weeks later, and told defendant he was afraid of said operation if there was a possibility of involving the hip-joint or said "track." Defendant repeated his assurance that neither would be involved. Upon inquiry as to what effect a slight inflammation with which plaintiff was suffering would have on the operation, defendant replied that there was no danger, as he was not going anywhere about the hip-joint or said inflammation. After considering the matter further, plaintiff's father went to see defendant the third time in May, 1925, and, after defendant had repeated in substance the assurances hereinbefore detailed with reference to the character and effect of said operation, contracted with defendant to perform said operation. The agreement was "that the operation would only be a minor one, that defendant would only go under the skin and clip the leaders and muscles, and would not go near plaintiff's hip-joint or the 'track' aforesaid." Defendant operated upon plaintiff on July 11, 1925, keeping him in the operating room two hours and fifty minutes, "during which time plaintiff's father and mother were in said hospital awaiting the results of said operation." After said operation defendant called plaintiff's father aside and said to him that he, defendant, was greatly disappointed in the results obtained, although he had cut to the capsule of the hip, far deeper than he expected to cut. Plaintiff's father replied: "If you have gone to the hip-joint, you have ruined the boy." Defendant said, "No, I don't think so." Paragraph 17 of the petition follows in full: "Plaintiff avers that the act of defendant in cutting as he did to the capsule of plaintiff's hip-joint was a violation of the agreement made by defendant with plaintiff's father in behalf of plaintiff as aforesaid, was a breach of defendant's duty to plaintiff, and was a trespass and a tort upon plaintiff's person." "As a result of said tort of defendant," plaintiff's hip-joint is completely out of the socket, resting loosely against the flesh; the inflammation and infection in plaintiff's body is enormously increased; he is a helpless and hopeless cripple; his condition is progressively growing worse and is without remedy; he suffers, and will continue to suffer, excruciating pain; he will never be able to do any work," etc.

In his answer the defendant denied the material allegations of the petition, and denied "that he was negligent in any manner whatsoever in the treatment of the plaintiff, but, on the contrary, avers that the operation which defendant performed upon plaintiff was performed in a skilful, careful and proper manner, and that plaintiff's present condition is not attributable to any act of negligence on the part of the defendant."

1. The evidence in this case is in sharp conflict, and, under the law, this court is without authority to set aside the verdict for defendant upon the general grounds of the motion for a new trial.

2. In charging the plaintiff's theory of the case, that the defendant committed a breach of his duty if he performed a different operation from the one he contracted to perform, the court said: "Such other or additional operation would be considered in law a trespass upon the person of the patient, unless the surgeon could show that such other or additional operation was necessary to save the life of, or prevent injury to, the patient, and there existed an emergency in which the consent of the patient or some person authorized to act for him could not be obtained." This instruction is complained of in the motion for a new trial, on the following grounds: (a) It is an erroneous statement of the law as applied to the issues and evidence in the case. (b) It was not founded on any evidence, and was outside of any legal issue made in the case. (c) It was not adapted to the issue and the evidence in said case, and was confusing to the jury in suggesting an issue and a defense not raised or supported by the evidence. (d) Because the undisputed evidence shows that the father and mother of plaintiff were in the same building where the operation was performed and readily accessible during the whole time of said operation.

"The general rule is that instructions by the court to the jury must be warranted by the evidence. Where instructions are given that are not warranted by the evidence and are calculated to mislead and confuse the jury, the error requires a new trial." *Central Georgia Power Co.* v. *Cornwell,* 139 *Ga.* 1 (76 S. E. 387, Ann. Cas. 1914A, 880). However, the reviewing court looks to the whole record to see if the complaining party suffered prejudice. *Kirkland* v. *Brewton,* 32 *Ga. App.* 128 (2) (122 S. E. 814); *Gate City Dairy Co.* v. *McRae,* 164 *Ga.* 810 (139 S. E. 542). While

there was no direct evidence that any "additional operation" was necessary either to save the patient's life or to prevent injury to him, there was evidence to the effect that the operation was proper and necessary; and while it would have been better to omit the charge complained of, yet, after looking through the entire record, we are so impressed with the perspicuity and fairness of the charge as a whole, and with the impartial and lucid manner in which the issues in the case were presented to the jury, that we do not believe the jury were confused or misled, or that the plaintiff suffered prejudice. Grounds 2 and 3 of the amendment to the motion for new trial involve the identical question raised by ground 1, and none of these shows reversible error.

3. The remaining grounds complain of the admission in evidence, over the plaintiff's objection, of the testimony of various surgeons to the effect that the operation performed was recognized by the profession as a proper one, and was proper in the plaintiff's case. The testimony complained of in each of the said fifteen grounds was to the same effect, and in each instance the same objection was made, to wit: "that it was irrelevant in the case, that the issue upon this point was not as to the character of the operation as being good surgery or not, or being skilfully performed or not, but the issue was as to whether or not the operation was the operation contracted to be performed." Bearing in mind that the defendant's plea denied the alleged contract and averred that the operation performed was done in a skilful, careful, and proper manner, and alleged that plaintiff's condition was not due to any act of negligence on the part of defendant, we find no error in any of these grounds.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., dissents.*