41094.   STATE HIGHWAY DEPARTMENT v. MOORE et al.

Decided March 17, 1965—Rehearing denied April 1, 1965.

*Eugene Cook, Attorney General, Richard L. Chambers, Horace Campbell, Assistant Attorneys General, Harry T. Lawrence, Deputy Assistant Attorney General,* for plaintiff in error.

*H. E. Kinney, T. L. Shanahan,* contra.

Felton, Chief Judge. In this condemnation case the only question to be decided is whether the court erred in charging the jury that "In estimating the value of land taken for public purposes, it is not restricted to its agricultural or productive qualities, but inquiry may be made as to all other legitimate purposes to which the property could be appropriated," on the ground that there was no evidence showing the adaptability of the land for any purpose other than agricultural. We think that the exception to the charge is meritorious and that the court erred in giving in charge the foregoing principle. The only evidence that a part of the land could be used for any purpose other than agricultural was that a part of the land was suitable for an *approach* to an airport for the reason that adjoining land was *investigated* for use as an airport, at which time the condemnee asked $1,000 an acre for the land over which would be the approach to the runways of an airport if built, and which was not the condemnee's best land. The rule in this State is that such a charge is error when there is no evidence that the land involved would be used for any purpose other than that to which it was devoted at the time of the taking or from which the jury could infer any reasonable probability that it was suitable for any other use. *Central Ga. Power Co. v. Cornwell,* 139 Ga. 1 (76 SE 387, AC 1914A 880); *State Hwy. Dept. v. Weldon,* 107 Ga. App. 98 (129 SE2d 396); *State Hwy. Dept. v. Allen,* 108 Ga. App. 388 (133 SE2d 64); *State Hwy. Dept. v. Whitehurst,* 109 Ga. App. 737 (137

SE2d 371); *State Hwy. Dept. v. Godwin,* 109 Ga. App. 740 (137 SE2d 351). The evidence in this case as to the probability of use of part of the land as an approach to an airport was highly speculative and even if it be conceded that it was suitable for such a use, as almost any land would be, there is no evidence that the investigation showed that the adjoining land to that part considered for an approach was approved or chosen for an airport site or would have been but for this condemnation or notice that it would be instituted. For all we know some other site might have been selected as the more suitable site or a decision against the construction of an airport at this site might have been made. There is no evidence that a part of the condemnee's land would probably have been used as an approach to an airport assuming that it was suitable and that its market value had been proved. Nor was there any evidence of value for airport use, save that the condemnee "asked at that time $1,000 per acre," referring to the time when there was some investigation made. An unaccepted offer to buy at a certain price is not evidence of value, *Groover v. Simmons,* 161 Ga. 93 (129 SE 778); the asking price of the owner can be no better. *Atlantic C. L. R. Co. v. Harris,* 1 Ga. App. 667, 669 (57 SE 1030).

The court erred in giving the charge complained of and in overruling the motion for a new trial.

*Judgment reversed. Bell, P. J., Frankum, Jordan, Hall and Eberhardt, JJ., concur. Nichols, P. J., Russell and Pannell, JJ., dissent.*

RUSSELL, Judge, dissenting. The trial court charged in the language of *Code* § 36-505: "In estimating the value of land when taken for public uses, it is not restricted to its agricultural or productive qualities, but inquiry may be made as to all other legitimate purposes to which the property could be appropriated." The only question before this court is whether this constitutes prejudicial error, whether it must be deemed to have so misled the jury to the detriment of the condemnor that another trial of the issues must be had before another jury. I do not think so. I find evidence in the record to support giving *Code* § 36-505 to the jury in the first place, and, in the second, I cannot see where the State Highway Department would in any event have been harmed.

(a)   The condemnor's witness Pritchett testified as follows:

"Q.   Did you inquire if or find out that part of this property or the adjoining property in this area had been sought and priced to build an airport down there; would it be suitable for that? A.  Yes, sir."

The condemnee's witness, David, testified: "Another reason [that I stated that the land is worth around $1,500 an acre] was the fact that that land was—we investigated it to use as an air strip and he asked us at that time $1,000 an acre for just one edge of it and that was putting it—in other words, that was not bothering his farm completely. . . So I would say that his cultivatable land is worth at least $1,500 an acre. Q.  And where was the area that you wanted to build an airport? A.  It was right down in here. Q.  How much land were you going to take? A.  We were not going to take too much of his because we had—mainly it was for the approaches, and not actually a part of the runways. Q.  You were just going to take a little bit of his land in there for approaches; is that why he wanted $1,500 an acre for it? A.  Well, he just wanted $1,000 an acre. Q.  Is that the reason, because you were going to take a little part of it? A.  Yes, but that was not his cultivating land. This is kind of swampy area here. Q.  You could not use a swampy area for an airport could you? A. No, but you can for the approaches. Q.  You can use a swampy area for the approaches? A.  Yes, but you have to clear it out. It would have to be cleared out. Q.  You mean that you can go down in a swamp in an airplane? A. Well, the plane comes down and actually the landing strip was on beyond that. . . Q.  Now, what is wrong with this big tract, this 91 acres here? A.  Because it is not fit for anything except pasture land except one little strip down there. Q.  I thought you said it was good for an airport? A.  For the approaches."

I do not consider this testimony, as the majority opinion characterizes it, "highly speculative." It is positive opinion evidence of the suitability of the land for a purpose which had been investigated by both witnesses who were at the time actually engaged in procuring land for an airport and who were seriously considering the condemnee's land for this purpose. What is

speculative, of course, is whether or not the airport will eventually be built at this location. This is what the majority opinion shows that it means when it uses the language: "For all we know some other site might have been selected as the more suitable site or a decision against the construction of an airport at this site might have been made." In other words, the majority opinion is holding that until proof is offered that a part of the property *will* be used for another purpose, inquiry into its *availability* for such use is forestalled. This is contrary to the plain mandate of the Code section, which says that "inquiry *may be* made as to *all other* legitimate purposes to which the property *could* be appropriated." The availability for use, and not the use itself, is the criterion of the statute. In *Harrison v. Young,* 9 Ga. 359, 364, Judge Lumpkin says by way of illustration of this point: "Suppose I have on my premises a waterfall, admirably adapted to machinery, and a portion of my land is seized and applied to the erection of a bridge or the construction of a railroad, so as to render the water-power unavailable; in computing my damages, ought not this fact to be taken into consideration?" I therefore understand the law to be that inquiry may be made and evidence offered to the jury, and the law given in charge, that other uses may be considered, and this prior to proof that the other use is presently intended to be adopted.

(b) In any event, however, this charge was completely innocuous in view of the verdict, and only a rigid adherence to technicality would authorize that all the issues in this case be tried again. The Highway Department was condemning approximately 20¾ acres of land, for which it originally offered $18,350, or slightly under $1,000 per acre. The special master found the value to be $32,219, or slightly over $1,500 per acre. The jury awarded $42,000, or slightly over $2,000 per acre. But, as to the strip of land in the corner over which there had been negotiations for purchase as an airport approach strip, the only value stated for this use was $1,000 per acre, or less than half what the jury in fact awarded. It therefore seems obvious to me that this testimony, if error, was favorable to the complaining party, since, had it been accepted, the value of the strip of land to be devoted to airport use would have to be found worth less

than half of the average value which the jury in fact found the land to be worth.

The rule as stated in *Central Ga. Power Co. v. Cornwell*, 139 Ga. 1 (2a) (76 SE 387) which is cited in the majority opinion as the precedent for reversal is: "Where instructions are given that are not warranted by the evidence and are calculated to mislead and confuse the jury, the error requires a new trial." I see no possible way in which this instruction, if in fact unsupported by evidence, could have misled this jury to the detriment of the condemnor, in view of the verdict rendered.

I am authorized to say that Nichols, P. J., and Pannell J., concur in this dissent.

### ON MOTION FOR REHEARING.

It is contended by the condemnee on motion for a rehearing that the evidence authorized the charge complained of for the reason that he contends the evidence shows that the land was suitable for an industrial site as well as for an approach to an airport. We have nothing to add insofar as the airport approach feature is concerned. There is likewise no evidence that the land was suitable for an industrial site and that there was a reasonable probability that it might be used for such a purpose. The evidence on the subject is as follows: "Q. How far did it lie, Mr. Pritchett, west of U. S. 41 Highway—or east, I mean, of 41 Highway; how far is it east of 41? A. Oh, I would estimate between a half of a mile and a mile. Q. How about for potential future industrial property; how would it lay for that? A. Well, I find the question very hard to answer in how would it lay. Q. (Interposing) I am talking about as far as the contour and the laying and the use for industrial property; how would it lay for that? A. Good, if the consideration is only one of contour. You use the word use, I don't think that this property is now suitable or could compete as an industrial site at this time."

*Rehearing denied.*