## CENTRAL GEORGIA POWER COMPANY *v.* MAYS.

1. On the hearing of a proceeding to condemn private property for public purposes as provided by statute, and to assess damages, it is error for the court to charge the jury that "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a cause of action." Such charge may mislead the jury into believing that the condemnation proceedings are unlawful and that they should assess damages accordingly.

2. In condemnation proceedings authorized by the statute the willingness or unwillingness of the property owner to part with his property is not a subject-matter of consideration. The statute (Civil Code 1910, §§ 5206, et seq.) provides how damages to private property condemned for public purposes may be assessed.

3. In assessing damages, under the facts in this case, there are two elements to be considered: First, the market value of the property actually taken; and, second, the consequential damages which naturally and proximately arise to the remainder of the owner's property from the taking of that part which is taken and devoting it to public purposes.

4. It can not be assumed in condemnation proceedings that there will be negligent construction or operation so as to cause damages in excess of that which would naturally and proximately result from the construction and operation of a transmission line across the property sought to be condemned.

5. It is not error for a court, in condemnation proceedings, to allow the plaintiff's witness on cross-examination to answer the question, "What was it [the land over which the plaintiff seeks to construct its transmission line] worth for building purposes? For building purposes it might be worth more?" by saying, "It might if any one wanted to use it," the value of the land for building purposes being one element in ascertaining the market value of said land.

6. It is not error for the court to overrule an objection to the following question propounded to and answered by the defendant in proceedings to condemn land for public purposes: "How much do you say the transmission line depreciates the market value of your land there?" Answer: "Ninety dollars an acre," where the witness has already testified what the market value of the land was before and after the transmission line was built.

7. It was not error to allow the plaintiff's witness in condemnation proceedings, on cross-examination, to answer the question, "Do you think that transmission line would have any effect on this property [the property of defendant in issue] for building purposes?" when taken in connection with the testimony of other witnesses who testified as to the market value of the land before and after the transmission line was built.

NOVEMBER 15, 1911.

Condemnation. Before Judge Daniel. Butts superior court. May 16, 1911.

*W. T. Johnson,* for plaintiff in error.   *H. M. Fletcher,* contra.

HILL, J.   The Central Georgia Power Company, a corporation chartered under the laws of Georgia, sought to condemn certain lands in Butts county, belonging to the defendant, R. W. Mays, under the Civil Code (1910), §§ 5206, et seq., for the purpose of erecting, maintaining, repairing, and patrolling "a single line of towers, and wires strung upon the same, and from tower to tower, for the transmission of high and low voltage electric current, and also a telephone or telegraph line upon said towers, with all the necessary foundations, anchors, braces, cables, wires, appliances, and fixtures necessary to properly construct, support, protect, and operate the same upon, and over, and across" the land described in the notice, which was given by the Central Georgia Power Company to the defendant Mays.   Assessors were duly appointed, and they selected a third.   The assessors awarded for "the rights of way and other interests and easements sought to be condemned" the sum of $10, and as consequential damages to the property not taken they awarded the sum of $25, and for the consequential benefits nothing. From this award the defendant Mays took an appeal to the superior court of Butts county.   On the trial of the case in the superior court, the jury found for Mays the sum of $215, and judgment was had upon said verdict accordingly.   Whereupon the plaintiff in error made a motion for a new trial upon the various grounds set forth therein, which was overruled by the court, and plaintiff in error (the condemnor) excepted.

1.   In the view we take of this case, it will not be necessary to consider each ground of the motion for a new trial separately, inasmuch as the principles of law here ruled may be applied to the various grounds covered by the motion.   One ground of the motion for a new trial is as follows:   "Because the court erred in charging the jury as follows:   ' The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a cause of action.'" We think this charge was calculated to mislead the jury.   The condemnor in this case, as appears from the record, was proceeding under the statutes of this State to exercise the right of eminent domain in the assessment of damages to the right of way through the lands of the defendant in error.   It was proceeding, as the record discloses, in an orderly and lawful manner, as authorized by Civil

Code (1910), §§ 5206, et seq., to condemn a right of way through the defendant's land. It was not insisted that the plaintiff in error did not have the right under the law, or procedure, to condemn the right of way for the purposes stated in the notice; and therefore, in the exercise of this lawful right and authority, the effort to condemn according to the statute could not properly be termed an unlawful interference with the enjoyment of the property by the owner; and the use of the language by the court to the jury to the effect that "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a cause of action," may have misled the jury into thinking that the entire proceedings were "unlawful," and that they should allow damages on the basis that the Central Georgia Power Company was "unlawfully" interfering with the defendant's property; whereas the record shows it was proceeding in the way pointed out by the statute to condemn the right of way. The principle here ruled is in entire accord with that laid down in the case of *Atlanta Terra Cotta Co.* v. *Georgia Ry. &c. Co.*, 132 *Ga.* 537, 543 (64 S. E. 563), where a similar charge to the one under review was in these words: "If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances predominate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrong-doer." In that case the Georgia Railway and Electric Company was proceeding to condemn a right of way under the same statute that is here involved; and this court there held, with reference to that portion of the charge above quoted, that "These charges embodied legal propositions relevant to a suit for a tort, but not to the determination of the amount to be awarded for the exercise of the power of eminent domain. If land is lawfully condemned for the right of way of a railroad, such condemnation and the taking and lawful use of the right of way under it do not constitute a tort."

2-4. As the case is to go back for a second hearing, we desire to lay down briefly the rule for the measure of damages in condemnation proceedings like the one now before us. In condemnation proceedings authorized by the statute, the willingness or unwillingness of the property owner to part with his property is not a subject-matter of consideration. The law provides how the damages

to private property taken for public purposes by corporations or persons authorized to take or damage such property shall be assessed. Civil Code (1910), §§ 5206, et seq. There are two elements of damages: First, the market value of the property actually taken. In determining this, the nature and character of the property, its situation, its availability for different uses, and all the facts which may be disclosed by the evidence tending to throw light upon its market value may be taken into consideration and from all of them the jury may arrive at what is the fair market value of the property taken. In the case of *Atlantic Coast Line R. Co.* v. *Postal Telegraph Co.*, 120 *Ga.* 281 (48 S. E. 20), this court held: "Where private property is taken for public use, as by condemnation by a railroad company, the owner is entitled to compensation for its whole value; not for any particular object, but for all purposes to which it may be appropriated. And see, *Harrison* v. *Young*, 9 *Ga.* 359; Boom Company *v.* Patterson, 98 U. S. 403 (25 L. ed. 206). Lewis on Eminent Domain (3d ed.), § 706, well states the rule as follows: "In estimating the value of property taken for public use, it is the market value of the property which is to be considered. The market value of property is the price which it will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it. In estimating its value all the capabilities of the property, and all the uses to which it may be applied or for which it is adapted, are to be considered, and not merely the condition it is in at the time and the use to which it is then applied by the owner. . . All the facts as to the condition of the property and its surroundings, its improvements and capabilities, may be shown and considered in estimating its value." "Generally speaking," says the same author, "the true rule seems to be to permit the proof of all the varied elements of value; that is, all the facts which the owner would properly and naturally press upon the attention of a buyer to whom he is negotiating a sale, and all other facts which would naturally influence a person of ordinary prudence desiring to purchase. In this estimation the owner is entitled to have the jury informed of all the capabilities of the property, as to the business or use, if any, to which it has been devoted, and of any and every use to which it may reasonably be adapted or applied. And this rule includes the adaptation and value of the property for any,

legitimate purpose or business, even though it has never been so used, and the owner has no present intention to devote it to such use."

The second element for consideration is whether consequential damages will naturally and proximately arise to the remainder of the owner's property from the taking of that part which is taken, and the devoting of it to the purposes for which it is condemned, and including its maintenance and operation. The measure of such consequential damages is the diminution in the market value of the remainder of the property proximately arising from the causes just mentioned. Remote or merely speculative or possible damages are not allowed in considering the maintenance or operation of the lines of towers and wires of the company. The jury are to consider their maintenance and operation in the usual and ordinary methods of so doing. They can not assume, in a condemnation proceeding, that there will be negligent construction or operation so as to cause damages in excess of that which would naturally and proximately arise from proper construction and operation. If the company be negligent in such matters, causing damages beyond those naturally arising from such construction and operation, this might give rise to a subsequent separate cause of action.

The principles herein announced, or several of them, were invoked by requests to charge. Some of these requests were not aptly worded, and in some instances the same principle was invoked in more than one request; so that, if given, there would have been a repetition of such principles in the charge; and in other instances they were covered by the general charge. We do not think, however, that the charge sufficiently covered the rulings here made, and we think that it was deficient in not giving distinctly the measure of consequential damages to the property not taken.

5. It was not error for the court to allow the plaintiff's witness, on cross-examination, to answer the question, "What was it [the land of defendant over which the plaintiff sought to construct its transmission wire] worth for building purposes? For building purposes it might be worth more?" by saying, "It might if any one wanted to use it." What the property was worth for building purposes was only one element of its value, and it could be shown what it was worth for any other legitimate purpose, and its fair market

value would be arrived at by estimating what it was worth for all purposes to which it could be applied, or for which it was adapted.

6. It was not error for the court to overrule an objection to the following question propounded to and answered by the defendant: "How much do you say the transmission line depreciates the market value of your land there? A. Ninety dollars an acre," where it appears that the same witness had already testified that the fair market value of the land was $100 an acre without the transmission line, and $10 per acre with the transmission line on it. This was but another way of saying that the fair market value of the land before the condemnation proceedings were had was $100 per acre, but that the damage done by the transmission line was $90 per acre, which left it worth only $10 per acre. The answer, in view of all of the. witness's testimony, was not a mere conclusion, but was based upon the witness's estimate of what the market value of the land was before the transmission line was built, and the fair market value of the same after the transmission line was built on the. land.

7. It was not error to allow the plaintiff's witness, J. A. Kimbell, on cross-examination to answer the question, "Do you think that transmission line would have any effect on this property [the property of the defendant in issue] for building purposes? A. I think it would," when taken in connection with the testimony of other witness who testified as to the market value of the land, before and after the transmission line was built, for farming and building purposes.

The rulings hereinbefore made cover the remaining assignments of error, and it is not necessary to deal with each of them separately. We will not anticipate that the statements of the defendant which were set out in the 7th ground of the motion for a new trial, and which the court rebuked, though he did not grant a mistrial, will be made or permitted on another trial.

*Judgment reversed. Beck, J., absent. The other Justices concur.*