## FLEMISTER *v.* CENTRAL GEORGIA POWER COMPANY.

1. Under former rulings of this court, where a ground of a motion for a new trial complains that the court refused to allow a witness for the movant to answer a certain question, this does not raise a question which can be considered by the Supreme Court, unless it appears that counsel for the complaining party stated to the court what answer he expected to elicit from the witness; and it is not alone sufficient to state in the motion for a new trial that he in fact expected to prove certain things by the witness.

2. Where proceedings were taken by a company for the purpose of condemning land for use as a reservoir in connection with the production and furnishing of electricity to the public, a witness was qualified to be examined as an expert, after testifying that he was in the electric-

lighting business, and was to some extent acquainted with the operation of an electric plant and the value of water-powers; that he had been general manager of a company doing an electric-lighting business, having its place of business located on the same river which flowed past the condemnee's land; that he formerly looked after the business, construction, and installation, and was afterward secretary and treasurer of the company, having been connected with it for seven years at the time of the trial; and that he had some familiarity with water-powers on the river involved in the case, and had seen the shoals on the land of the condemnee sought to be condemned.

3. A witness who testified that he had charge of a city light and water plant, but that he was not familiar with the use of water-power for electric purposes, that he had some idea of the method by which water-power was utilized, but he knew very little about hydraulic engineering, and that he had never bought or sold a water-power, or constructed a power plant or dam, did not thereby qualify himself to testify as an expert in regard to the value of an alleged water-power on land sought to be condemned.

4. The question being what was the market value of the property sought to be condemned, including therein any value arising from a water-power located upon it, there was no error in rejecting the evidence of a witness, that, "assuming a market for that power within three miles of this place, a fair value of that undeveloped water-power, with the privilege of raising the water five feet, it ought to pay interest on a valuation of $5,000 or $5,500."

5. Books of science or art are not admissible in evidence to prove the opinions of experts announced in them.

(*a*) From the meager statements in the grounds of the motion for a new trial in regard to questions put to the witness on cross-examination touching matters contained in a book, it is not clear whether the rulings of the court are so erroneous and injurious as to require a new trial.

6. On the trial of an appeal from the award of assessors, in determining the value of land sought to be condemned, it is competent to introduce evidence of sales of similar property to that in question, made at or near the time of the taking.

(*a*) Where, in such a case, a witness had testified that the land sought to be condemned was worth from $100 to $125 per acre, it was too general a question, on cross-examination, to ask him, without more: "You know where this [designated] place is that sold at $4 an acre, right down there next to you?"

7. Where a notice of an intention to condemn certain property showed that it included the right to back water on land on which there was a shoal, and, on the trial in the superior court of the appeal from the award of assessors, the condemnor introduced evidence generally as to the value of the land sought to be condemned, but not referring specially to whether the shoal had any value for furnishing water-power, and the condemnee introduced evidence as to general value and also for the purpose of proving that the shoal was valuable as an undeveloped water-power, whereupon the condemnor in rebuttal offered evidence, by depositions previously taken, tending to prove that the shoal had no value for that purpose, there was no error in admitting such evidence.

8. The elements which are proper for consideration in determining the value of land condemned for use as a reservoir are discussed in *Central Georgia Power Co.* v. *Mays*, 137 *Ga.* 120 (72 S. E. 900), *Central Georgia Power Co.* v. *Preston*, 137 *Ga.* 348 (73 S. E. 505), and *Central Georgia Power Co.* v. *Stone*, 139 *Ga.* 416 (77 S. E. 565).

(*a*) A request to charge, though based upon a discussion in the opinion of a court of last resort, should not be argumentative.

9. In a proceeding to condemn land for use as part of a reservoir, if there is evidence tending to show that the property taken would include much of the lowlands and valleys of the condemnee's farm, and that this would destroy the general unity of the farm, and thus depreciate the market value of the part not taken, this would be a legitimate subject for consideration in determining the amount of consequential damages.

(*a*) Where there is evidence tending to show that the raising of the level of the water in the river alongside the place of the condemnee will prevent the drainage of the part of the bottom lands of the condemnee not taken, and will cause them to be filled with sand and destroy their value, this furnishes a legitimate subject for consideration by the jury; and a properly requested instruction based on such evidence should be given in charge, where the charge as given refers only in general terms to consequential damages to the land not taken, without reference to such specific elements of damages.

(*b*) The trial court is not required, upon request, to substantially repeat general principles of law already given in charge.

10. In determining the consequential damages, if any, to parts of the property not taken, the jury are not confined to damages proximately caused by the mere taking, but they should consider any evidence, if there be such, tending to show whether the legitimate use of the property taken, for the purpose for which the condemnation is made, will cause damage to the remainder of the property, lessening its market value.

(*a*) The charge on the subject of consequential damages was too restricted.

11. In view of the requests to charge tendered by counsel for the condemnee, including one to the effect that as to the property taken the actual cash market value should be allowed, the charge which the court gave on that subject furnishes no ground for a new trial.

12. In the absence of evidence tending to show that the use of the land condemned and taken as part of a pond would render the remainder of the land unhealthy and thereby decrease its market value, or of any claim to that effect made before the jury, it would have been better to omit the precautionary charge given on that subject.

13. None of the other grounds of the motion for a new trial require a reversal.

AUGUST 14, 1913.

Appeal from condemnation. Before Judge Edwards. Newton superior court. June 15, 1912.

*Dorsey, Brewster, Howell & Heyman*, for plaintiff in error.

*Hatcher & Smith* and *Greene F. Johnson*, contra.

33

LUMPKIN, J.   The Central Georgia Power Company instituted proceedings to condemn land of Mrs. Flemister.   From the award of the assessors an appeal was taken.   On the trial a verdict was rendered.   A motion for a new trial was overruled, and the condemnee excepted.

1.   Under the rulings in *Freeman & Turner News Co.* v. *Mencken,* 115 *Ga.* 1017 (42 S. E. 369), *Grant* v. *Noel,* 118 *Ga.* 258 (45 S. E. 279), and *Leverett* v. *Bullard,* 121 *Ga.* 535 (49 S. E. 591), the errors assigned in the grounds of the amended motion for a new trial, numbered three and sixteen, on the refusal to permit certain witnesses for the movant to answer stated questions, can not be considered, because it does not appear that it was stated to the court what answers were expected to be given by the witnesses to the questions propounded.   It is not improper, however, to say that the question whether a condemnee on appeal must file an answer or plea denying a statement in the notice to condemn, as to the number of acres contained in the entire tract of land which would be consequentially damaged, was not decided in *Central Georgia Power Co.* v. *Cornwell,* 139 *Ga.* 1 (76 S. E. 387).   There a plea was filed alleging that the tract contained more than the notice stated.   A motion was made to strike such allegation.   The contention was that the only question which could be considered must relate to the land described in the notice of intention to condemn, and that it could not be set up that the tract contained more acres than such notice alleged.   This court held that such contention was unsound.

2.   The witness Flake testified, that he was in the electric-lighting business, and was to some extent acquainted with the operation of an electric plant and the value of water-powers; that he had been general manager of a company doing an electric-lighting business, having its place of business located on the same river as that which flowed past the condemnee's land; that he formerly looked after the business, construction, and installation, and was afterward secretary and treasurer of the company,—having been connected with it for seven years at the time of the trial; and that he had some familiarity with water-powers on the river involved in the case, and had seen the shoal on the land of condemnee, sought to be condemned in connection with the hydro-electric works of the condemnor.   Under this evidence, he was qualified as an expert to give an opinion as to the availability and market value of the

land for use for a water-power, based on facts shown to be within his own knowledge, or on facts proved by others and hypothetically stated to him. His cross-examination went rather to his credit than to his competency. *Doster* v. *Brown,* 25 *Ga.* 25 (71 Am. D. 153) ; *White* v. *Clements,* 39 *Ga.* 232, 242; *Macon Railway & Light Co.* v. *Mason,* 123 *Ga.* 773, 778 (51 S. E. 569).

3. The witness Harrison did not qualify as an expert in regard to water-powers. He testified, that he had charge of a city light and water plant, but that he was not familiar with the use of water-power for electrical purposes; that he had some idea of the method by which water-power was utilized, but he knew very little about hydraulic engineering; and that he never bought or sold a water-power, or constructed a power plant or dam. He had never seen the property involved in the controversy. He did not show himself to be expert so far as water-powers were concerned, but showed that he was not so.

4. It was complained that a witness was not allowed to testify, that, "assuming a market for that power within three miles of this place, a fair value for that undeveloped water-power, with the privilege of raising the water five feet, it ought to pay interest on a valuation of $5,000 or $5,500." This was properly rejected. The question was not on what valuation the witness thought that, under a certain assumption, a water-power should pay interest, but what was the market value of the property taken.

5. It has been held that books of science or art are not admissible in evidence to prove the opinions of experts announced in them. *Johnston* v. *Richmond & Danville R. Co.,* 95 *Ga.* 685 (22 S. E. 694) ; *Cook* v. *Coffey,* 103 *Ga.* 384 (30 S. E. 27) ; *Boswell* v. *State,* 114 *Ga.* 40, 43 (39 S. E. 897). How far a work of science may be used in cross-examining a witness as to the source of his knowledge on a given subject, and in determining whether, if he relies on a certain book as authority, he correctly states it, is not now before us. Certain tables, such as those of life-expectancy, are admissible. We can not be quite sure, from the meager statements of the grounds of the motion for a new trial in regard to this matter, whether or not the rulings of the court were erroneous and so injurious as to require a new trial.

6. On a question in regard to the value of land sought to be condemned, it is competent to introduce evidence of sales of prop-

erty similar to that in question, made at or near the time of the taking. The exact limit either of similarity or difference or of nearness or remoteness in point of time is difficult, if not impossible, to prescribe by any arbitrary rule, but must to a large extent depend on the location and the character of the property and the circumstances of the case. It is to be considered with reference to throwing light on the issue, and not as a mere method of raising a legal puzzle. 2 Lewis, Em. Dom. (3d ed.) § 662; *City of Columbus* v. *McDaniel,* 117 *Ga.* 823 (45 S. E. 59). Where a witness had testified that the land sought to be condemned was worth $100 to $125 per acre, it was too general a question, though on cross-examination, to ask him: "You know where this Lumus place is that sold at $4 an acre, right down there next to you?" This assumed the location and sale at a stated price, without regard to time, and left to the witness only to answer "yes," if he knew the place. Had he testified that he never knew of any land in that vicinity being sold at such a price, or at less than a certain price, it would have been competent, on cross-examination, to inquire as to a particular sale in the neighborhood at a less price, or his knowledge of values could be tested by appropriate questions; but, as the case stood, the question allowed to be asked and answered was too sweeping even for cross-examination.

7. The notice of condemnation showed that it included the right to back water on certain land, on which there was a shoal. On the trial of the appeal, the condemnor introduced evidence as to the value of the land sought to be condemned, but which made no special reference to the question whether the shoal had any special value for furnishing water-power. The condemnee introduced evidence as to general value, and also tending to prove that the shoal was valuable as an undeveloped water-power. In rebuttal, the condemnor offered evidence, by depositions previously taken, tending to show that the shoal had no value for that purpose. This was admitted over objection based on the ground that the evidence should have been offered in chief and not in rebuttal. In this ruling there was no error. *Southern Railway Co.* v. *Clay,* 130 *Ga.* 563 (4), (61 S. E. 226). The statement of the presiding judge to the effect that he was inclined to sustain the objection, but, as he might be affected by a desire to get through, he thought it best to overrule the objection, was not a very good reason; but the ruling

was not a very bad ruling—certainly not so bad as to furnish any ground for a reversal.

8. The elements which are for consideration in determining the value of land condemned have so recently been considered in *Central Georgia Power Co.* v. *Mays,* 137 *Ga.* 120 (72 S. E. 900), *Central Georgia Power Co.* v. *Preston,* 137 *Ga.* 348 (73 S. E. 505), and *Central Georgia Power Co.* v. *Stone,* 139 *Ga.* 416 (77 S. E. 565), that it would seem to be unnecessary to repeat what was there said. See also *Harrison* v. *Young,* 9 *Ga.* 359. The request to charge embodied in the twenty-fifth ground was generally in the right direction, and was doubtless taken largely from Boom Co. *v.* Patterson, 98 U. S. 403 (25 L. ed. 206). It is, however, argumentative in form, which may be meritorious in an opinion of a court of last resort, where a proposition is being supported by reason and authority, but is not desirable when a trial judge is charging a jury, and, under the practice in this State, may amount to a positive error.

9. The request to charge set out in the twenty-seventh ground of the motion for a new trial called attention to the fact that the condemnee contended that the property taken would include much of the lowlands and valleys of her farm, and that this would destroy the general unity of the farm, and thus depreciate the market value of the part not taken. The request to charge set out in the twenty-eighth ground sought to call the attention of the jury to the contention of the condemnee that the raising of the water in the river alongside her place would prevent the drainage of the part of her bottom lands not taken, and would cause them to be filled with sand and would destroy their value. These were legitimate subjects for the consideration of the jury, and the charge in general terms as to consequential damages to the land not taken did not render the requests valueless. Lewis, Em. Dom. (3d ed.) § 710; *Savannah etc. Ry. Co.* v. *Williams,* 133 *Ga.* 679 (66 S. E. 942).

The requests embodied in the twenty-sixth and twenty-ninth grounds of the motion were substantial repetitions of general principles contained in the charge; and the law does not require emphasis by repetition, on request.

10. Where a part of a tract of land is condemned for use as a reservoir by a hydro-electric company, the owner is entitled to be

paid the value of the land taken; and if there are consequential damages to the balance of the land, they should also be allowed. In determining the amount of the latter, they include not only damages directly arising from the taking of a part of the land, but also from the legitimate use thereof for the purpose for which it is taken, if the evidence shows that such use will cause damage. Consequential benefits, if any, can be set up to reduce consequential damages, or to prevent their allowance. The charge on this subject was too restricted in repeating several times that the consequential damages recoverable were only such as were proximately caused by the taking.

11. We can not say that the charges complained of in the thirtieth, thirty-first, and thirty-second grounds of the motion furnish any ground for reversal. Counsel conceded in requests to charge that the amount to be allowed for the market value of the property taken should be on a cash basis; and one court at least has declared that such is the law. Brown *v.* Calumet River Ry. Co., 125 Ill. 600 (18 N. E. 283). The decision in *Cincinnati & Georgia Railroad* v. *Mims, 71 Ga.* 240 (3), did not hold that the market value to be determined is not on a cash basis, but simply dealt with the form of the question put to a witness.

12. As there was no evidence of sickness produced by the use of the land taken for a pond, and it does not appear that any claim was made before the jury for damages on that account, it would have been better not to make the precautionary charge referring to such sickness. If there had been evidence that the use of the land taken for a pond affected the rest of the place for a residence, and thus diminished its market value, that might have been a circumstance for consideration by the jury. Had there been such evidence involving the rendering of the place unhealthy and thus reducing its market value, the court might well have cautioned the jury that no recovery could be had on account of any particular sickness, but that the effect of the pond on the market value of the rest of the land, if any, could be considered.

13. None of the other grounds of the motion for a new trial show error for the reasons assigned in them; nor would they require a reversal.

*Judgment reversed. All the Justices concur.*