HANKINSON *et al. v.* HANKINSON *et al.*

No. 6561.  FEBRUARY 23, 1929.

G. C. *Anderson, Hammond & Kennedy, Paul T. Chance,* and *J. A. Kennedy,* for plaintiffs in error.

*Callaway & Howard* and *Fullbright & Burney,* contra.

BECK, P. J.    J. C. Hankinson brought a petition against the administrator and the heirs at law of Mrs. Annie L. Rowell, deceased, by which he sought to have specifically performed an alleged parol agreement which he claimed Mrs. Rowell· entered into with him shortly before her death.    He alleged that prior to her death she promised to make a will devising her entire estate to him in consideration of and upon his promise that he would help her manage and oversee the farm as long as she lived; that this parol agreement was entered into in 1923; that Mrs. Rowell died in 1924; that her estate had a value of $15,929.75; that at the time of entering

into the agreement the plaintiff was operating a two-horse farm on his father's place in South Carolina; that he was with his family and social connections, and would not have come to another State to oversee a farm for a stranger for any reasonable salary; that Mrs. Rowell at the time of entering into the agreement was in good health, and had a living expectancy of fourteen years; that he had every reason to believe that she would live that long, and his agreement contemplated such length of service, or during her life; that at the time of the agreement she was alone on a farm out in the country, and wanted a member of her family for whom she had affection to live with her, and that the contract was therefore not entered into solely upon a business consideration. Demurrers to this petition were overruled, and on exception that judgment was affirmed by operation of law, this court being equally divided in opinion. *Hankinson* v. *Hankinson,* 163 *Ga.* 561 (136 S. E. 459). S. H. Hankinson, administrator of Mrs. Rowell's estate, and father of the plaintiff, made no defense. In their answer the other defendants denied the material allegations of the plaintiff, and averred that while S. H. Hankinson, the administrator, was named as a defendant, he was actively assisting the plaintiff in the prosecution of the suit, and was using the funds and assets of the estate for that purpose; that while the son appeared as the plaintiff, his father, the administrator, had procured the action to be brought, and from the beginning of all the transactions he had engineered and directed all the activities of his son, in an effort to procure the entire estate for himself and his son.

At the trial the plaintiff offered in evidence the depositions of S. H. Hankinson, administrator. The defendants objected to this testimony upon the grounds appearing in the motion for new trial, and in conjunction therewith offered an amendment to their answer, setting up an estoppel against the plaintiff and the administrator to use this testimony against the title of the estate and the heirs; insisting that it appeared from these depositions that by mutual consent between the plaintiff and his father, S. H. Hankinson, the latter had been appointed administrator; that with the full consent of the plaintiff the administrator had partly administered the estate; that the plaintiff had dealt with the administrator in and out of the court of ordinary and had borrowed of him large sums of money belonging to the estate, without any

security therefor, for which acts a proceeding was then pending to remove the administrator. The amendment concluded as follows: "Defendants aver, that, by reason of the facts set forth in their original answer of file, the said S. H. Hankinson, administrator, is forever estopped from now attempting to set up an outstanding title to the property of said estate, antagonistic to his trust as administrator and against the estate and the rights and title of these defendants whom he represents; that having got possession of the said estate in the manner set out in defendants' original answer, with full knowledge at the time of all the facts in this case, it would now be inequitable, unfair, and against public policy to allow the said administrator to impeach his former judicial acts as administrator, in his efforts to set up title to the property of the estate in his son, J. C. Hankinson." The court rejected this amendment, and the defendants excepted. The trial resulted in a verdict and judgment for the plaintiff. A motion for new trial was overruled, and the defendants excepted. The original motion contains the usual general grounds. An amendment was filed containing numerous additional grounds.

■ In the first special ground of the motion, numbered 4, error is assigned upon the ruling of the court admitting, over objection of the defendants, the following evidence of S. H. Hankinson, who was introduced as a witness for the plaintiff: "It was twice she told me that she expected that if worse came to worse, she wanted my son, J. C. Hankinson, to come over and take charge of her farm and run it for her. She especially wanted him to take charge of her farm. After Mr. Rowell's death we had another conversation in the presence of J. C. Hankinson, at her home near Green's Cut, and she told him [me] that she wanted him to come over and live with her; wanted him to come over and carry on the farm for her; and he asked her in what way, and she said, "I will give you my real estate and my personal property at my death, if you will come over here and help me manage it and carry it on until I die." He told her he would do it. He was to stay there with her and she was to furnish him some money along as he needed it, as he was a single man; and he went on that condition. . . At the time of that conversation he stayed there. . . Q. You were present and heard that conversation? A. Yes, sir. Q. And he was there? A. No, sir, he wasn't there. She told me she wanted

him to come (he wasn't present at that time) to take charge of her farm at her husband's death; but when he did go over she traded with him or promised to give him her estate at her death under the terms I have stated. Defendants' counsel objected to the admission of the testimony, on the grounds: (1) "Because, the said witness being the administrator of said estate and the trustee of these defendants by his own solicitation, and having, with full knowledge of all the facts, accepted the trust, partly administered the estate, and being then in full possession of the estate, he was estopped from setting up or attempting to set up a title to the property against his trust, against the estate and these defendants whom he represented." (2) "Because the said S. H. Hankinson was incompetent as a witness to testify to said alleged transactions and communications with the deceased, in that by said testimony he was seeking to relieve, modify, and avoid his liability and responsibility to the estate for his defaults as administrator; it appearing that at the time said testimony was offered a proceeding was then pending to remove him as administrator for such defaults, one of which, as appears from his own testimony, being as follows: 'The following cancelled checks (amounting to $1,605.65) on the First National Bank, where I had funds of the estate, I think was correct—so far as I remember. He (plaintiff) used the $1,605.65 to run the farm, whether it took it or not. He has not paid it back. I think that he has paid back $800 or $900. I am not certain about that. The only security that I have for it is my interest in the estate, if I have any; and if I have not, then he has got his.' " (3) "Because, as movant contends, at the time of the alleged transactions and communications with the deceased, he, the witness, was in all of said transactions acting for and in behalf of and as agent for his son, J. C. Hankinson, and as such he was incompetent to testify in behalf of the plaintiff as to the said transactions and communications."

The court did not err in overruling each and all of these objections to the testimony. The principle of estoppel against trustees setting up title adverse to their trust, as embodied in Code section 5739, has no application here. That section reads as follows: "Trustees and other representatives with custody of papers have ample opportunities to discover defects in the title of property in their care, and are estopped from setting up title adverse to their

trust." And it is clear that it could not be applied as affording ground for rejecting the testimony referred to, because the administrator was not attempting to set up any title in himself at all. The testimony favorable to the plaintiff in this case was really against the financial interest of the witness. He was an heir at law of the decedent and entitled to one sixth of the estate. In case the plaintiff prevailed in this suit, the witness would lose this interest. It may be that the witness would prefer to lose this sixth interest and see his son, the plaintiff, prevail. But he and his son are two distinct persons; they have no common property rights in this estate; no common interest to set up. The weight of the evidence given and its value might be affected by the relationship between J. C. and S. H. Hankinson, but the latter was not estopped from giving this testimony. Nor was the witness incompetent to testify as he did in this case. The evidence does not show that he was an agent for his son, J. C. Hankinson. Nor was he rendered incompetent by the fact that a proceeding was then pending to remove him as administrator upon alleged "defaults." Code section 5858 reads in part as follows: "No person offered as a witness shall be excluded by reason of incapacity, for crime or interest, or from being a party, from giving evidence, either in person or by deposition, according to the practice of the court, on the trial of any issue joined, or of any matter or question, or on any inquiry arising in any suit, action, or proceeding, civil or criminal, in any court or before any judge, jury, . . ; but every person so offered shall be competent and compellable to give evidence on behalf of either or any of the parties to the said suit, action, or other proceeding, except as follows: 1. Where any suit is instituted or defended by . . the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the . . deceased person, as to transactions or communications with such . . deceased person." And the language of section 5859 is: "There shall be no other exceptions allowed under the foregoing paragraphs." The evidence of the witness does not fall within the exceptions contained in subparagraph 1 of section 5858; and it is equally manifest that it does not come within any of the other exceptions. This court said in the case of *Phillips* v. *Cooper*, 93 *Ga.* 639, 644 (20 S. E. 78): "In construing the evidence act of 1889, we find it the safer course to adhere to the

plain letter of its terms; and thus avoid the confusion which arose from attempted liberal constructions of its predecessor, the evidence act of 1866." And this court has ever kept the principle here laid down as its guiding light in the construction of the evidence act embodied in Code section 5858 and its subparagraphs. In *Kitchens* v. *Pool,* 146 *Ga.* 229 (91 S. E. 81), the 5th headnote is as follows: "Ordinarily, in a suit instituted or defended by a husband for or against a deceased person, it is competent for the wife to testify in regard to transactions between the husband and the deceased. Mere personal interest, such as that entertained by a near relative, does not disqualify a witness. But, if it should appear from the evidence that the wife has a legal or pecuniary interest in the result of the suit, or that she is acting as agent of her husband, she would be an incompetent witness."

■■ The rulings in headnotes 2 and 3 require no elaboration, as the principles there ruled have been laid down in the cases cited and in other cases decided by this court.

■ In the 7th and 8th grounds of the motion for new trial error is assigned upon the refusal of the court to give in charge to the jury the following, as requested: (a) "I charge you that this court in which the plaintiff, Mr. Hankinson, has elected to test the righteousness of this cause, is a court of equity. His prayer is for the specific performance of a verbal agreement or contract which he claims was made by Mrs. Rowell and himself. This is an equitable remedy which he has chosen to invite you to pass upon, rather than upon his strict legal rights in the premises. I charge you that specific performance of such verbal agreements is a remedy which is never to be demanded as a matter of absolute right in either party to such a contract. A much stronger case is required to maintain such suit, than is required to defeat it. Equity will not decree specific performance, unless strictly equitable and just. On the contrary, in all cases where it is clearly inequitable to grant it, it should be refused; and if the defendant has shown facts or circumstances, independent of such verbal agreement, which, in your opinion, makes it inequitable to interpose for the purpose of performing such verbal contract, it should be refused." (b) "I further charge you that mere inadequacy of price may justify you in refusing specific performance; so also any other fact showing the verbal contract to be unfair and unjust or against good

conscience. In order to enforce such verbal contract, it must be certain, definite, and clear, and so precise in its terms that neither party can reasonably misunderstand it. In the absence of allegations and proof as to the value of an entire estate, or the value and extent of the service alleged to have been rendered as a consideration of the verbal contract, it is impossible for you to determine whether the services performed constitute an adequate or grossly inadequate price for the estate or property of the person with whom the alleged contract was made; nor could it be determined, in the absence of such essentials, whether the contract was unfair or unjust or against good conscience." Both of these requested charges were argumentative in character. In the first this language is used: "A much stronger case is required to maintain such suit than is required to defeat it. Equity will not decree specific performance, unless strictly equitable and just. On the contrary, in all cases where it is clearly inequitable to grant it, it should be refused; and if the defendant has shown facts or circumstances, independent of such verbal agreement, which, in your opinion, makes it inequitable to interpose for the purpose of performing such verbal contract, it should be refused." Such language is decidedly argumentative, and for that reason it was not error for the court to refuse to give it. The second requested charge as set forth above is open to the same objection, and in part is not entirely correct, for the court was requested to charge the jury that "mere inadequacy of price may justify you in refusing specific performance." That principle is generally applicable in suits brought for specific performance; for in section 4637 of the Code it is said: "Mere inadequacy of price, though not sufficient to rescind a contract, may justify a court in refusing to decree a specific performance." But we do not think that this principle is applicable to its full extent where an oral contract to make a will, under the circumstances and for the consideration set forth in the petition in this case, is shown. *Flemister* v. *Central Georgia Power Co.*, 140 *Ga.* 511 (8), 517 (79 S. E. 148) ; *McGee* v. *Young,* 132 *Ga.* 606 (64 S. E. 689) ; *Landrum* v. *Rivers,* supra.

The rulings in headnotes 5 to 9, inclusive, require no elaboration.

*Judgment affirmed. All the Justices concur, except*
HINES, J., dissenting. I dissent from the ruling in the fourth

164

headnote. The requested instruction should have been given. *Shropshire* v. *Rainey,* 150 *Ga.* 566 (2) (104 S. E. 414). Especially should this request have been given as the court did not in its charge give to the jury the principle embraced in the Civil Code (1910), § 4637.