## 22539. STATE HIGHWAY BOARD OF GEORGIA *v.* GEORGIA RAILROAD AND BANKING COMPANY *et al.*

DECIDED SEPTEMBER 30, 1933.

*J. Q. West,* for plaintiff.

*Cumming & Harper,* for defendant.

MacINTYRE, J.   The State Highway Board of Georgia instituted proceedings to condemn the property of the Georgia Railroad & Banking Company, as owner, and the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company, as lessees, for the purpose of making a change in State Highway number 10, which crosses the railroad-tracks in the center of Thomson, Georgia.   The land sought to be condemned cut off a small triangular piece of land from the railroad park on the east side of Main street in Thomson, in the center part of which park was the Confederate Monument.   The State Highway Board sought also to condemn for highway purposes the railroad land traversed by the main line of the Georgia Railroad and its several side-tracks; and also land on the south side of the railroad-tracks which was used by the railroad for a short mail-car line, upon which a little mail-car was pushed back and forth to serve the night trains.   Arbitration was had by the parties and the railroad company was awarded $200 as compensation for the land taken.   From this award the railroad company appealed to the superior court, and the issue was submitted to a jury, which raised the amount of compensation awarded the railroad company to $750.   The highway board made a motion

for a new trial, which was overruled, and it excepted. The case of *Atlantic Coast Line Railroad Co.* v. *Postal Telegraph-Cable Co.*, 120 *Ga.* 268 (48 S. E. 15, 1 Ann. Cas. 734), is discussed at length by both parties in this case. In that case there was longitudinal condemnation of the right of way of the railroad company by the telegraph company, and in that case Justice Evans, speaking for the court, said: "A telegraph company does not acquire the fee, but only an easement, in the right of way of a railway company condemned for the purpose of constructing a telegraph line thereon. The easement embraces the land actually occupied by the poles and fixtures for guy wires, and the right to stretch the wires on the poles and to enter upon the right of way to construct and repair the telegraph line. The measure of damages in such a case is the value of the land actually taken and the extent to which the value of the use of the right of way by the railway company is diminished by its use by the telegraph company." Further in the same decision he explains that, "In arriving at the value of the land actually appropriated, the general salable value of the right of way for other uses than that to which it is applied by the railway company can not be considered. While it is true that the railway company has the absolute fee, the right of way has no general market value so long as it is used by the railway company for railroad purposes. The appropriation to public use amounts to a withdrawal of the right of way from any use except what is necessary or ancillary to the operation of the railroad. The railway company is a creature of the law; it is an artificial person with limited powers, and the scope of its powers is determined by its charter. The act of incorporation, while conferring powers, also imposes duties upon this legal entity. It owes a duty to the State and the public to exercise its corporate functions for the promotion of the purpose of its organization. So long as a railway company uses its right of way for the purpose of its incorporation it can not devote it to any other purpose than that of operating a railroad, or some purpose ancillary thereto. Any other disposition of its right of way while it is discharging its duty to the public under the act of incorporation can not be presumed. The record does not disclose any intention, present or prospective, on the part of the railway company to abandon its right of way, or to devote it to any other purpose that [than?] its use for a railroad. The railway company, in the operation of a railroad,

is performing a quasi public function. On the faith of the discharge of this public duty, it was given the right to acquire, either by voluntary contract, or by condemnation, private property necessary to accomplish the purpose of its organization. The possible contingency of applying the land acquired for this purpose to a different and altogether foreign use, even if permissible under its charter and the tenure of its title, is too remote to be considered in assessing the value of the land. In estimating the value of the land taken and appropriated to the exclusive use of the telegraph company, only the value of the land, determined by the use to which it is applied, can be considered, and any supposed market value contingent on the remote possibility of the abandonment of the operation of the railroad, or the subjection of the right of way to any other use, is too remote to be taken into consideration." That decision likewise states: "The damage for opening a street over the railroad right of way in the populous city of Chicago was assessed at one dollar. The Supreme Court of the United States, in the case of Chicago &c. R. Co. *v.* Chicago, 166 U. S. 226 (17 Sup. Ct. 581, 41 L. ed. 979), held that the measure of compensation was the amount of decrease in the value of the use for railroad purposes by the use for the purpose of a street, being exercised jointly with the use of the company for railroad purposes; and the compensation would be nominal if the railroad's use of its tracks were not unduly interfered with for railroad purposes by the crossing of the street."

The cases of *Central Georgia Power Co.* v. *Mays,* 137 *Ga.* 120 (72 S. E. 900), and *Flemister* v. *Central Georgia Power Co.,* 140 *Ga.* 511 (79 S. E. 148), cited by the defendant in error, have to do with condemnation of private property by public corporations. These cases are not applicable, because "there is an essential difference between the various elements of damage which enter into the assessment of private property taken for public use and that which enters into the assessment of damages for burdening property devoted to one public use by imposing upon it an additional easement of a public nature. Where private property is taken for public use, as by condemnation by a railroad company, the owner is entitled to compensation for its whole value; not for any particular object, but for all purposes to which it may be appropriated." *Atlantic Coast Line R. Co.* v. *Postal Telegraph-Cable*

*Co.,* supra. In the present case there is a condemnation of a crossing, not a longitudinal strip. The map introduced in evidence showed that the property sought to be condemned was all within the boundary lines of the right of way of the railroad. The witness S. R. Young, the chief engineer for the Georgia Railroad Company, testified: "We were not using that land, but that was land the railroad bought and paid for, and belongs to be of considerable value, and land at one time when passenger business was extensive was used considerable. Recently the land has not been used. Its use as a park in no way interferes with its use by the public. It had a further value to the railroad in that if we had elected to enlarge our depot, we could and would have enlarged it westward. . . The land is there for our purpose, one valuable purpose for which the land could be used if in future we should extend the depot. . . During that time we have had use for that square. The people who trade with us have congregated there to watch the trains going by and to meet their friends. It is not a public square. We would not have allowed the city to build a building there, but that use of it by the monument and flower beds does not conflict with the use of it by the railroad. We have used the property without conflicting with the use to which the Woman's Club put it. I think people get out of automobiles and walk by the monument to the waiting-rooms. . . At the present time the railroad business is at a low ebb. At the present time there is no need or necessity for increasing our railroad facilities down there for freight or passenger business." It will be noted that the evidence showed that the park was railroad property within the boundary lines of the right of way and was used for railroad purposes, and that the railroad had no present intentions of using it for any other purpose than the purpose for which it was using it at this time. We therefore think that the measure of damages in this case was the difference between the value of the exclusive use of the land in question for railroad purposes and that value after the highway board acquired the privilege of participating in its use by making a change in its crossing.

In a case involving a similar question the Supreme Court of Kentucky said: "The only instruction that should have been given is one saying to the jury that they must find for the railroad company in such a sum as will amount to the difference between

the value to the railroad company of the right to the exclusive use of the land occupied by the street for the purpose for which it was being used and the value after the city acquired the privilege of participating in such use by the opening of the street across it." Louisville & Nashville R. Co. *v.* City of Louisville, 131 Ky. 108 (114 S. W. 743, 24 L. R. A. (N. S.) 1225.) In the instant case the crossing was partly shifted in one direction and was more in the nature of an enlargement than an entire change; and under § 2673 of the Civil Code, which prescribes that all railroad companies shall keep in good order, at their expense, the public road or private way established pursuant to law where crossed by their roads, the railroad company would not be entitled to compensation for the cost of making the structural change of its right of way at the crossing. In *Cleveland* v. *Augusta,* 102 *Ga.* 233 (29 S. E. 584, 43 L. R. A. 638), it was said: "The duty of the railroad company to construct and maintain, at its own expense, suitable crossings at the intersection of the railroad with highways, applies as well to highways laid out and opened after the construction of the railway as to those existing prior to its construction." Under the view we take of this case, it was improper to admit the testimony of witnesses as to the general market value of that part of the park taken. Especially was that true with reference to the witness Lokey, on whose property a filling station had been condemned by the highway previously. "Prices paid in settlement of claims for damage caused to property by a common injury or taking are the resultant of too many variable considerations to be competent on the question as to what damage has been suffered by similar property from the same cause; although the amount to be paid was reached by agreement, arbitration, or the verdict of a jury. This is still more clearly the rule where the two pieces of property are in different conditions." 22 C. J. 180.

We do not think it necessary to discuss further the different assignments of error. The application of the principles announced in this opinion may be easily made to each specific assignment, and the judgment is reversed for the reason that testimony was admitted as to the general market value of that part of the park which was condemned; and it follows that the charge of the trial judge to the jury on the subject of general market value was error.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*