40364, 40365. HOUSING AUTHORITY OF THE CITY OF ATLANTA v. NEW; and vice versa.

DECIDED NOVEMBER 4, 1963—
REHEARING DENIED NOVEMBER 19, 1963.

*King & Spalding, Charles H. Kirbo, R. Byron Attridge,* for plaintiff in error.

*Schwall & Heuett, Emory Schwall,* contra.

FELTON, Chief Judge. ■ This court adopts the order of the trial judge in overruling the motion for a new trial, as amended, as its own, without addition, except to say that the court is of the opinion that in the charge excepted to the first special ground of the amended motion the court unintentionally, probably due to a slip of the tongue, stated that the jury might consider the *profits* of the property, if there be any, when, as a matter of fact, he intended to say that the jury might consider the *loss of the profits of the property.* We say this for the reason that nobody contended that the property involved produced any profits and the only question involved was how the *loss of profits,* by reason

of the circumstances of the case, affected the value of the lands involved. The following is the order of the trial judge which this court adopts as its judgment, with the exception above noted and his order as to ground 2 which has been abandoned: "It is necessary to observe, at the outset, that this case was tried upon the basis of the stipulation upon pretrial that the value of the property taken and the consequential damage, if any, to the remaining property, were to be determined 'as of the date *December 1, 1958*' although it appeared during the trial that such was not the date the Condemnor acquired title to the property taken and the condemnation petition was not filed until *May 2, 1961*. It must also be noted that the pretrial order stated that 'The *principal* issues are: (a) The value of the property actually taken, (b) The consequential damage, if any, to the remaining property.' It should be pointed out that the answer of condemnee alleged certain facts concerning the granting to him of a building permit, his actions about financing construction of an apartment project and the amount of net income of at least $24,000 per annum he would have received therefrom and the blocking of said project, after he started construction and the refusal of the City to issue him a plumbing permit. Thus the evidence, the rulings of the court and the charge must all be viewed in the light of the foregoing and the other allegations of condemnee's answer. Ground I—In Ground I of the plaintiff's amended Motion for New Trial, the plaintiff contends that the court erred in giving a charge to the jury relative to evidence as to loss of profits not being recoverable as such but that the jury might consider same if there be any, as a circumstance in aiding the jury to reach a figure to be found as a fair and reasonable value of the property. It will be noted from reading the defendant's pleadings that he contended that the property had been zoned for apartment use at his instance and he had deeded the street to the public authorities; that water lines had been run down to the property and other plans made for the development of an entire project on both the portion of the property taken and the remaining portion. It is specifically alleged in paragraph 18 that the profits or income from such a project would be at least $24,000 per annum and the condemnee testified along the same

line. Evidence was introduced by the condemnee to show his plans for building an apartment project on the property. There was evidence that the foundation of one portion of the project had already been laid and that money had been expended by the owner in the construction; that the construction stopped because of his failure to get a plumbing permit for the reason that the plan for urban renewal projects had been formulated and the municipal authorities proceeded upon the basis that a portion or more of his property would be taken for the urban renewal project. In the case of *Harrison v. Regents,* 105 Ga. App. 817 (2b) [125 SE2d 793], the court said: 'Loss of future revenue as such is not a proper measure of damages but the value of the property to owner for the particular purposes for which he designs to use it can always be shown.' One of the standard and recognized ways of appraising property by the expert appraisers is to estimate the capabilities of the use of the property and in estimating its value the capability for producing income is considered and capitalized in order to arrive at a valuation. The amount of income which is based upon the capability of the property and that plan of appraisal must of necessity be one of a prospective nature. The court in this case told the jury that such profits are not to be considered as an item of recoverable damages; that if there be any such profits they may be used as a circumstance in aiding the jury to reach a figure as to the proper value of the property. In view of the evidence in the case as to the productivity of the property for use for apartment purposes and the estimate of the income to be derived therefrom both as plead in paragraph 18 by the condemnee and as shown by the evidence in the case, the court was authorized to instruct the jury that they were not to consider the profits as part of the damages to be awarded, but that they could consider them as a circumstance in aiding them to reach a figure as to the value of the property. It is therefore not correct to say that the court instructed the jury on an issue which was not raised by the pleadings or by the evidence. The question of apartment use for the property was specifically raised by the pleadings of the condemnee and by the evidence submitted in the case. Certainly the jury could not have been misled by anything the court said

in the quoted portion of the charge nor could the condemnor have been harmed by the charge given. Ground 3. Ground three contends that there was error in the admission of certain testimony by witness Francis Scott Key relative to the use to which the property condemned is to be put in connection with the matter of consequential damages to the remainder of condemnee's property. He testified that the study he made of the intended use of the area, derived from the records of the Housing Authority, showed that it was to be developed for colored rental property. He withdrew his statement that it was to be a controlled cost project but the court admitted his testimony as to the use to which the property condemned was to be put, based upon his study and knowledge of the records of the Housing Authority, the condemnor. In the case of *Flemister v. Central Georgia Power Company*, 140 Ga. 511, 513 (10) [79 SE 148], the court said: 'In determining the consequential damages if any, to parts of the property not taken, the jury are not confined to damages proximately caused by the mere taking, but they should consider any evidence, if there be such, tending to show whether the legitimate use of the property taken, for the purpose for which the condemnation is made, will cause damage to the remainder of the property, lessening its market value.' Under this ruling of the Supreme Court of Georgia the evidence objected to was admissible for the purpose of throwing whatever light it might reflect in determining the consequential damages, if any, to the remainder of the property. If it was to be devoted to a colored housing project, then that would be indicative of the effect upon the value of the property not taken and that was one of the issues in the case. The fact that there might be a conflict in the evidence as to the purpose for which the property taken was to be devoted would not make this evidence inadmissible. It would be for the jury to determine which evidence they concluded to be the most believable. Ground 4. In Ground four movant complains of the admission of the testimony of a witness relative to the value of the remaining property for certain uses. He related what in his opinion, would be the value of the property if it was devoted to use as housing for colored people and expressed an opinion as to his value for use by white people.

The movant complained that his testimony that it was of no value for use for housing for white people was incredible. The credibility of a witness' testimony is one for the jury. The evidence related to the value of the property remaining in connection with the item of consequential damages and if the opinion of the witness was not believable, it was a matter for the jury to determine rather than the court. If the witness adjudged that for the use of housing for white people the land remaining would have a value of $1.00, would the court have to exclude that answer on the grounds that it was incredible? If so, how far would the court have to go? If the witness testified that the land was worth $500, for use for housing for white people, would the court properly admit that evidence? Movant's contention would mean that the court would have to pass upon the amount testified by the witness and pass upon its credibility before it could be submitted to the jury. It would constitute an invasion of the jury's province. Even though it may be incredible to movant's counsel, it might not be incredible to the jury or to others concerned with the value of the land remaining. If it had no market value for use by the owner for housing for white people, then he was simply expressing his opinion of the value and the weight to be given to his opinion is a matter for the jury to determine. In the realm of value one has to deal with the practical realities of life and not with social theories. What a piece of property will bring on the market may depend entirely upon the potential occupancy of a development of the land. Ground 5. In Ground five, it is difficult to understand whether counsel for movant is objecting to the admission of plaintiff's Exhibit #1, or whether he is objecting to certain testimony to which the court sustained his objection. If he is objecting to the admission of plaintiff's Exhibit #1, it must be remembered that the property involved here was re-zoned for apartment use, that the testimony of all of the witnesses was that it was adapted for that use and that its highest and best value was for apartment use and that Exhibit #1, which was the plan of the housing development which the plaintiff had actually embarked upon, was approved by the City of Atlanta and the property was zoned for apartment use. Under the evidence in the case this plot plan of the apartment project

was clearly admissible. See *State Highway Dept. v. Thomas,* 106 Ga. App. 849 [128 SE2d 520]. Ground 6. Ground six relates to the cross examination of witness James F. Brown and the particular question which was excluded and of which complaint is made was a question which appeared to be argumentative. The witness's recollection as to the appraisal had been probed on cross examination and the way the question which is insisted upon was phrased, it was argumentative and related to something of which there was higher and better evidence; that is, the appraisal. The appraisal was subsequently put in by the condemnor and the jury could draw its own conclusions as to the basis upon which witness Brown fixed his estimate of value. The condemnor also put up witness Hickman and another officer of the same loan company as that of Mr. Brown and it is not apparent to this court how the condemnor was injured by the ruling of the court on the question which was excluded. Grounds 7, 8 and 9. These three grounds relate to the testimony of Colonel Malcolm Jones and to defendant's Exhibits 19, 42 and plaintiff's Exhibit #1. In order to understand the situation, it must be kept in mind that at the time agreed upon by the parties for the fixing of values, to wit: December 1, 1958, the plans referred to in P-1, D-19, and D-42, were the only plans in existence. The final plans for this urban renewal project were not adopted until almost a year after the plans referred to in D-19, D-42 and P-1 and as of the date December 1, 1958, these plans were the ones in effect insofar as the activities of the condemnor, The City of Atlanta, were concerned and these were the ones a copy of which was given to the defendant New at the time the work was stopped on the apartment project. As was noted in the beginning of this order, the condemnation proceedings were not filed until May 2, 1961. Movant's counsel objected that this was not the final plan adopted by the Board of Aldermen, but the Board of Aldermen did not adopt the final plan until after December 1, 1958, and, as will be recalled, December 1, 1958, was the date agreed upon by both sides as of which the values should be fixed. The evidence was introduced in accordance with what the facts were as of that date and the plan in existence at that date would have bearing upon the value of the property as of that date. It

must also be noted that in paragraph 17 the condemnee alleges that the entire tract was subject to the threat of condemnation suit being filed against it continuously since the denial of the plumbing permit, thereby rendering it impossible for this defendant to develop this property. The evidence referred to in Ground seven and the plats referred to in Grounds seven, eight and nine, show the confused situation which would pose a threat of condemnation against the property on the date of December 1, 1958, which was the date agreed upon as the date for the fixing of values. In view of this evidence as well as all of the other evidence in the case it has to be remembered that, as stated in the beginning of this order, this case is different from the ordinary condemnation suit. By virtue of the stipulation of the parties and by virtue of the pleadings of the defendant, the evidence showed that the map to which objection is now made was the product of the condemnor, the Housing Authority of the City of Atlanta and was the one which was, on December 1, 1958, the plan of this Thomasville Urban Redevelopment Area project. I do not see how the condemnor could have been hurt by evidence which was the condemnor's plan on December 1, 1958, and which was the situation existing as of that date. If the plan has no relevancy then the date has no relevancy and yet counsel for movant agreed upon the date of December 1, 1958, as the date for the fixing of values. Ground 10. In Ground ten the movant complains of the admission in evidence of testimony of the condemnee, Mr. New, and other witnesses, relating to the denial of a plumbing permit by the City of Atlanta to Mr. New. Reference should be made to paragraphs 12, 13, 14, 15, 16 and 17 of the condemnee's answer in considering this ground of the motion. It will be noted that the refusal of the plumbing permit is specifically alleged and referred to in the paragraphs of the condemnee's answer, to which reference has just been made. The only parts of the condemnee's answer which were stricken were paragraphs 25 and 27 which were apparently stricken at the pretrial of the case. The parties and the pretrial judge evidently considered that all the other portions of the answer were proper and were still in the case and effective as part of the condemnee's side of the case. It is the rule which has been consistently fol-

682

lowed by Georgia courts which is quoted in *A. E. Speer, Inc. v. McCorbey*, 77 Ga. App. 715 (2c), 718 [49 SE2d 677], as follows: 'The answer, unless its bad portions have been reached by special demurrer, must stand as a whole, and the evidence in support of any part of it is admissible because the defendant has the right to prove her pleadings as laid.' See also *Halliburton v. Collier*, 75 Ga. App. 316 (5), 326 [43 SE2d 339]; and *Overstreet v. W. T. Rawleigh Co.*, 75 Ga. App. 483 (2), 489 [43 SE2d 774].

"In addition to the fact that it was stipulated that the values would be determined as of December 1, 1958, and the circumstances surrounding that date included in which are the transactions relative to the stoppage of work on the construction of the first apartments on the property which was not taken, all of which would reflect some light upon the matter of consequential damages as of the date stipulated, the answer of the condemnee was not purged of these allegations and therefore the condemnee had the right to introduce evidence in support of the allegations which were not stricken on pretrial. Ground 11. Ground eleven complains of the court's refusal to give a requested charge to the jury. This requested charge related to the plumbing permit. In this request the following language is used: 'In this connection I charge you that whether such permit was granted or denied, this evidence has *no bearing* on the issue which you are to determine, that is, just and adequate compensation to the defendant, but this evidence may be considered by you *only* insofar as it may tend to explain why the defendant terminated the construction which he had commenced.' This request was erroneous in two respects. One, the request says 'has no bearing on the issue which you are to determine, that is, just and adequate compensation to the defendant . . .' The request is wrong in that this evidence had a bearing on the use to which the property would be put on the stipulated date and this could be a factor in the value of the property taken and the consequential damages to the remainder on December 1, 1958. It must be remembered that there was no condemnation proceeding pending at that time and the circumstances involving the property as of that date would reflect some light upon both the value of the property and the consequential damages to the remaining prop-

erty and therefore it would have a direct bearing upon just and adequate compensation to the defendant. The requested charge is also wrong in the respect that it contains language 'this evidence may be considered by you *only* insofar as it may tend to explain why the defendant terminated the construction which he had commenced.' The fact that the defendant terminated the construction which he had commenced is only one of the factors involved in the circumstances surrounding the property on the stipulated date, December 1, 1958. The refusal or denial of the permit not only reflected light upon the reason why the defendant terminated the construction which he had commenced, but also it indicated whether or not the property could be used at that time for the construction of apartments. To have confined the jury within the limits of the request would have been erroneous. Ground 12. Movant's ground twelve relates to an objection to an 'entire line of questioning.' Witness Malcolm Jones was on cross examination by condemnee's counsel and he was being questioned concerning the Martini plan. It appears from this questioning that the plan was dated almost a year prior to the adoption of the final plan, but as is disclosed by the evidence in the case, the Martini plan was the only one officially in existence at the time of the stipulated date of December 1, 1958. The final plan had not been adopted and the condemnation proceedings had not been instituted. Therefore, the action relative to the condemnee's property and the plan involving the area in which condemnee's property was located did have a bearing on the question other than that relating to the plumbing permit. It would show the use to which the property was to be devoted by the condemnor, the Housing Authority, according to its plan in existence on the stipulated date. In movant's complaint that the witness was talking about a permit in an area other than that included within the project, it must be remembered that part of the condemnee's property was not included in the project according to the final plan and according to the condemnation proceedings, and therefore the permit although as it developed by subsequent events does not relate to the part of the property actually taken, insofar as was known on December 1, 1958, it does relate to the property which was perhaps included

in the Martini plan and if it did not so relate, it did relate to property which would be remaining after the taking of part of the condemnee's property. Movant's counsel argues on page 25 of the amended motion that the taking of land by eminent domain includes the taking of all rights in such land including any right to a permit with respect to such land. If this be true then it was certainly permissible to have evidence concerning the right of the condemnee to a permit and the condemnor's action with respect thereto, as of the date stipulated, December 1, 1958. If a right to a plumbing permit was included in what was being condemned, then certainly evidence in respect to the plumbing permit was properly admissible in the case. On page 25, movant's counsel also contends that evidence of a policy respecting permits upon land to be acquired is irrelevant and immaterial to show any consequential damages to property not being condemned since such policy does not limit the owner's right to any permit outside the area being taken. However, it appears by the evidence in the case that the policy *did* limit the right of an owner to a permit outside the area being taken or at any rate to the remainder of the property of the condemnee in this instance and therefore the argument of counsel answers itself. The evidence shows that a permit was denied to the owner of property which was both within and without the limits finally determined by the Housing Authority and the Martini plan would and did, in fact, limit the owner's right in this instance. In movant's contentions as set out in (3) on page 25, he contends that there is no evidence that the owner applied for or was refused a plumbing permit until after the date stipulated in the pretrial order for evaluation of the property, December 1, 1958. There was certainly evidence from which the jury could find that the condemnee's plumber applied for a permit prior to the date of December 1, 1958, and there was evidence that on that date or shortly after that date the owner himself applied for a plumbing permit, and was refused. There may have been evidence to the contrary but certainly there was evidence from which the jury could could find that on or about the stipulated date (for fixing value), the permit was refused for the construction which the condemnee had begun upon part of his property. On page 25 of the amended motion,

movant's counsel asserts in (4) the denial of a permit by the City of Atlanta and any policy with respect thereto, is not a part of the taking of defendant's land in this proceeding, and his right to such permit, if any, with respect to any property owned by him, before or after the valuation date, is not affected by the proceeding. This contention is directly contrary to the assertion in (1) in the same paragraph of movant's amended motion. He asserts in (1) that the right to the permit was included in the taking and in (4) he says that in substance, such right is not included in the taking. This is blowing hot and cold in the same breath. It is ordered that condemnor's motion for new trial as amended be and it is hereby overruled on each and every ground thereof."

In the matter of the issue raised by the cross bill of exceptions, we think that the court erred in not allowing interest on the jury's verdict from December 1, 1958. Under the peculiar circumstances of this case the stipulation by the parties that the value of the property involved was to be ascertained as of December 1, 1958, was by necessary implication a stipulation that the taking and damaging of the property occurred December 1, 1958, and not from the time of the actual payment of the assessors' award into the registry of the court or tender to the condemnee, the times which are ordinarily considered the times of taking. *Central Ga. Power Co. v. Stone,* 142 Ga. 662 (83 SE 524). The fact that under the pretrial order there was no issue for determination *by the jury* as to the date of the taking does not alter the substance of the stipulation and its necessary legal consequence. The issue in this case is the value of the property taken and the damage to the property not taken at the time of the taking. It follows that a stipulation that the value of the property taken and the damage to the remaining property should be determined as of December 1, 1958, is equivalent to a stipulation that the property, for the purpose of this trial, was taken as of December 1, 1958, since the function of the jury under the stipulation was to make its findings as of the date of the taking, which in this case, in legal effect, was stipulated to be December 1, 1958.

Under the foregoing rulings the judgment on the main bill

686

of exceptions is affirmed and the judgment on the cross bill is reversed.

*Judgment on main bill affirmed; judgment on cross-bill reversed. Eberhardt and Russell, JJ., concur.*